ROBERT J. CAMP, BENJAMIN F. CAMP AND JOHN S. CAMP, PARTNERS UNDER THE FIRM NAME OF R. J. CAMP & BROS., APPELLANTS, VS. BENJAMIN F. HALL, APPELLEE.

1. A principal may appoint as many agents as he pleases to execute or superintend a particular work, and the acts of each, within the scope of his authority, will be binding upon the principal, unless the authority be a joint one only,

2. In the absence of statute, a master is not liable to his servant for personal injuries received in the course of his employment, through the negligence of a fellow servant when engaged in the same undertaking or common work.

3. A master owes certain personal duties to his servants, among which are those requiring him to furnish reasonably safe machinery and other appliances, a reasonably safe place to work, and instructions and warnings against special dangers attending hazardous duties to all servants who, from youth, inexperience or imbecility, are ignorant of such special dangers. If these duties are left unperformed, or are negligently performed, whereby personal injury results to such servant without his fault, he will be entitled to recover damages therefor.

4. The duties of a master to furnish his servant reasonably safe machinery and other appliances, a reasonably safe place to work, and instructions and warnings against special dangers attending hazardous duties to all servants who, from youth, inexperience or imbecility, are ignorant of such special dangers, are of a personal nature, and if delegated by the master to another servant, no matter what his title may be, nor what his grade or rank in the master's service, the master will be responsible for their non-performance, or for their negligent performance, notwithstanding the master has exercised due care in the selection of the agent to whom such duties are intrusted.

5. A master is liable in tort for his agent's negligent omission or commission, in all cases where the agent is at the time acting as such, within the apparent scope of his authority and in the performance of his undertaking, even though the agent was not, as a matter of fact, authorized to do the particular act

complained of, or had received express instructions not to do it.

6. It is within the apparent scope of the authority of the foreman and agent of the owners of a saw mill to direct the moving of lumber cars on a side-track in proximity to the mill, which are at the time being loaded with lumber from the mill, even though such lumber cars and side-track may not be owned, operated or controlled by the owners of the mill.

7. In pleading, if the matter pleaded be in itself insufficient without reference to the manner of pleading it, the defect is one of substance; but if the only fault is in the form of alleging the matter, the defect is formal.

8. In this State special demurrers in common law actions have been abolished, and no advantage can be taken of any defect which could formerly be reached by special demurrer only, i. e., defects of form, unless in a proper case by motion to strike out or amend the pleading as being so framed as to prejudice, embarrass or delay the fair trial of the action, under Section 1043 Rev. Stats.

9. Where a pleading, instead of alleging the ultimate facts, alleges only evidentiary matters of the ultimate facts, but the evidentiary matters alleged are sufficient to establish the ultimate facts, the defect in pleading such evidentiary matters instead of the ultimate facts, is one of form, and can not be reached by general demurrer. If, however, the evidentiary matters alleged be insufficient to establish the ultimate facts, the defect is one of substance, and amenable to general demurrer.

10. A party appellant is in this court confined to the specific grounds of objection made by him to questions propounded to witnesses in the trial court, and if he fails to argue such grounds of objection in this court they will be considered abandoned.

11. A question calling for the mere opinion of a witness on a material issue of fact presented by the pleadings and evidence, is properly excluded.

12. In an action involving questions of negligence and contributory negligence, a question to a witness to "state whether or not the injury received by the plaintiff * * was caused by his own negligence or carelessness?" is properly excluded.

13. The finding of a referee upon conflicting evidence is entitled to the same weight as a verdict of a jury; and it will not be set aside by this court unless the preponderance of evidence is

such as to justify the inference that the finding was based upon influences other than a due consideration of the evidence.

14. When a servant authorized by the master to control and direct another youthful and inexperienced servant, directs the latter to perform a dangerous service not in the line of his employment, but within the scope of the former's apparent authority, without warning or instructing him as to the danger of the particular service, the obedience of the latter servant will not, *per se*, be contributory negligence on his part, and he will be entitled to recover for any injury which may occur by reason of the failure to warn or instruct.

15. Where a minor is injured by the negligence of another, and the injury is of a permanent nature necessarily affecting him for life, such minor can, after attaining his majority, maintain an action for damages for such injury, notwithstanding any right of action which such minor's father might have had prior to the minor's majority.

## Appeal from the Circuit Court for Alachua county.

### STATEMENT.

Appellee on July 23d, 1890, brought suit against appellants in the Circuit Court of Alachua county; the amended declaration filed October 28, 1890, alleging, in substance, that in the latter part of the year 1882 the plaintiff was hired by his father to defendants, who then and still were conducting a saw mill business at the town or station called Campville in said county, to be employed by defendants in the work of making or putting together vegetable and fruit crates at said saw mill; for which work plaintiff was to receive one cent a crate for each crate so constructed, the work being simple and light, and such work as a child could perform without risk of injury from the dangerous machinery employed at said mill, and which was the only work plaintiff's father had hired him to be engaged in at said saw mill; that plaintiff continued at the employ-

ment of making crates for about five months, and until April 3, 1883, at which time as he previously had been, he was under the direction, control and orders of one Williams, the foreman and agent of the defendants in their said saw mill; that on said 3d day of April plaintiff was ordered by said foreman and agent to assist in pushing certain lumber cars which were on the side track of a railroad, in proximity to said saw mill, and which workmen regularly employed for the business were engaged in loading with lumber from the mill and moving on the railroad track; that one of said cars at which plaintiff was ordered to work was a front car which, on its left side, was so crowded with men pushing the car that plaintiff could not get a position there to assist the pushing, nor could he at the right side because of the lumber being piled along the said road track so close to the car as to leave no room for him to push, so that the only place left him to work was at the back end of the said front car which car was followed by one immediately behind it; that plaintiff occupied this place to assist as ordered in pushing the cars, which place was a dangerous one for a person to be placed in; that while the plaintiff was, from this position, pushing the front car with all his might and strength and not knowing or apprehending any danger, his foot slipped and the wheel of the car behind him which was also being pushed at the same time, ran upon and crushed his right leg all the way from above the knee to the thigh, breaking and tearing the leg to pieces, in consequence of which it became necessary to amputate said leg about two inches from plaintiff's body, which was done the same day; that at the time of said injury plaintiff was but thirteen years and ten months of age, and being of that

tender age he was not capable of apprehending the risk to his person from the dangerous work he was ordered to perform by said foreman and agent, and did not know or think of. any danger that might arise therefrom, and that said foreman and agent wrongfully ordered him to perform said dangerous work; that by reason of the premises plaintiff was then and there injured for life; that he thereby became greatly damaged, bruised and wounded, in so much that his life was greatly despaired of; that he became sick, sore and disordered in so much that he was confined to his bed for four months and to his house for eight months and it was seven months before he could even support himself on crutches, during all which time he was hindered and prevented from performing his necessary duties; and put to very great expense, and he will remain for life a helpless cripple. Damages were claimed in the sum of $20,000.

On December 1, 1890, defendants filed their demurrer, alleging that the amended declaration was bad in substance, with an entry in the margin of points of law to be argued, as follows: "1st. The said amended declaration does not show that the alleged foreman, Williams, had the exclusive control and authority of the plaintiff at the time of the alleged accident. 2d. The said amended declaration shows that the plaintiff received the alleged injuries through the negligence of a co-servant or co-employee of the defendants, and not through the negligence of the defendants. 3d. The said amended declaration is vague, indefinite and uncertain, in that it alleges that the defendants are conducting a saw mill business, yet it alleges that the plaintiff's injuries were received, brought about and caused by the cars of a railroad on the track of said

railroad, without alleging that the defendants controlled or operated, owned or had authority to operate, said railroad or the cars thereof, and does not give the name of said railroad, or the corporation or company controlling, operating or owning the same. 4th. If said railroad is not controlled by the defendants, but is controlled and operated by other parties (which said declaration does not show), then the parties operating and controlling said railroad is liable, and not these defendants." This demurrer was overruled January 22, 1891, and on February 2, 1891, defendants filed their pleas: 1st, not guilty; 2d, that plaintiff was injured by his own negligence and carelessness. Issues were joined on these pleas February 13, 1891, and on June 10, 1891, the cause was by consent referred to S. Y. Finley, Esq., who, after hearing evidence introduced by the parties, rendered judgment for plaintiff in the sum of $4,000, February 25, 1892. Defendants' motion for a new trial having been overruled by the referee, they entered this appeal prior to the adoption of our Revised Statutes.

The matters assigned as error, as well as such portions of the testimony as are deemed material to be stated, are referred to in the opinion.

The Chief-Justice of this court being disqualified, the parties in May, 1897, filed their written consent that the appeal be considered and disposed of by the other justices, without calling in a Circuit Judge, and thereupon, when the case was reached, the two qualified justices took up and considered the same and disposed of it by a judgment of affirmance on July 27, 1897. The appellants thereupon filed a petition requesting a rehearing and a reargument before a full bench, which was granted. Judge Malone, of the

Second Circuit, having been called in, vice the Chief-Justice, disqualified, the case was submitted to the court upon briefs and oral arguments on November 22d, 1897.

(Judge Malone, of the Second Judicial Circuit, sat in the place of Mr. Chief-Justice Taylor, who was disqualified).

*Cooper & Cooper* and *Geo. P. Raney*, for Appellants.

BRIEF OF COOPER & COOPER FOR APPELLANTS.

Argument.—To the plaintiffs amended declaration, filed the 28th of October, 1890, the defendants filed their demurrer on the following grounds:

1st. The declaration did not show exclusive authority in Williams, the alleged foreman, over the plaintiff.

2d. The injury was caused by the alleged negligence of a fellow servant.

3d. The declaration did not show that the defendant owned or rented the cars on the railroad in question.

4th. The persons operating said cars and railroad were liable to plaintiff, if anybody is.

The first error assigned is the overruling of this demurrer. The first and second of these grounds may be considered together. They pertain to the relations of Williams, the alleged foreman, to the plaintiff, as shown by the defendants declaration. The whole gravamen of the charge in the declaration is that plaintiff sustained the injuries complained of in observing the orders of Williams, who ordered him into the place of danger.

The declaration nowhere charges that Williams did have exclusive authority over plaintiff, nor does it show that plaintiff was bound to obey any order of Williams, that would subject plaintiff to injury. Exactly what Williams authority was as to the plaintiff, or his authority from the defendants over the other employees is not set out in the declaration, which would be necessary in order to hold defendants liable for any alleged injuries resulting from his orders.

It must have been Williams duty to give the order he hid, if any, to the plaintiff, and it must have been within the scope of his authority, and the declaration must show these facts in order to hold the defendants liable.

Williams was a fellow servant or employee of the plaintiff, and any negligence of his which caused the plaintiff to sustain injuries, is not the negligence of the defendants and they are not responsible to their employees for the negligence of their fellow servant, unless it were shown that he was an incompetent man to be intrusted with the duties of his position, and that plaintiffs knew it when they employed him, none of which facts are alleged in the declaration. 63 Mo., 303 and 43 Mo., 193; As to foreman being fellow servant, 62 Maine, 643; Sherman and Redfield on Negligence, 1158, n. 3; 52 Mo., 372; 117 Mass., 312.

The declaration shows that this injury was caused by a car on the railroad track running over the plaintiff. The defendants are not alleged in the declaration to own or operate these cars or the railroad, or that they were having the cars moved as any part of their business, consequently they are not the principals. If Williams was having the cars moved on somebody elses railroad, he was doing it for the owners or oper-

ators of the said cars, and railroad. The declaration should state positively that defendants were operating the said railroad, or that it was their business to move said cars, or they in fact were having the same done, and it was known to defendants that their employees for them were engaged in moving cars, that not being a part of the ordinary business of running their mill.

We submit that the demurrer to the amended declaration should have been sustained.

### SECOND AND FOURTH ERRORS.

The second and fourth errors assigned may be discussed together, as they relate to the same subject.

These errors are the fact that the referee permitted the witnesses Dupree and the plaintiff, to testify as to the injury being received by the plaintiff's being run over by a car on a railroad, without any allegation or showing in the evidence that defendants controlled, owned or operated the said cars, side track or railroad, or that said cars were being moved either by direction of the defendants, or by the order of their agent, or any one acting within the scope of their authority.

This testimony or course constituted an absolutely essential link in the plaintiff's evidence. He seeks to fasten the defendants with the responsibility for the accident and the injuries to himself on the ground that he was engaged at the time in *other business, under the orders of their agent, acting under the* authority but he nowhere states the *facts* in the declaration, or first shows that this was defendants business. If it was not, then they have no connection with this injury, nor does he allege facts, or first show that their al-

leged agent, Williams, had any authority to order employees *to move cars* on anybody else's railroad, these facts must first have been alleged and proved before evidence can be received that the injuries were occasioned by a car on a railroad running over the plaintiff. These facts were never alleged or proved, therefore as against the defendants this evidence was wholly irrelevant and improper.

### THIRD ERROR.

The third error assigned is the referee's permitting the witness, Dupree, to testify to seeing the plaintiff looking for a place to push the cars.

This testimony was improperly admitted on the grounds set fourth above, to the second and fourth errors, and because plaintiff was not justified in putting himself in between the cars in a place of danger, even if he could get no place on the side to push. No one ordered him to go between the cars, and it was not sufficient reason for his going between the cars, that he could not find a place on the sides to push. This testimony, therefore, was irrelevant, and ought to have been excluded.

### FIFTH ERROR.

The fifth error assigned is the refusal of the referee to permit the witness, Williams, to testify as to whether or not plaintiff's injury was caused by his own negligence. This was one of the issues in the case, and in connection with the other testimony, was proper to be asked.

It was not a mere opinion, it was a fact adduced from what the witness saw, it was the same as asking if the plaintiff had used ordinary care and judgment in being where he was and doing what he was doing.

This was asked of a witness acquainted with the facts, and who could accompany his answer with his reasons for his statement.

Negligence is a question of fact in this State, in a large measure, and not mere legal deductions, and any witness may answer whether plaintiff was negligent or careful in his conduct, out of which the accident arose.

### SIXTH, SEVENTH AND EIGHTH ERRORS.

These errors assigned may be discussed and considered together, as they render necessary a consideration of the whole law and facts of the case.

They allege error in the findings and judgment of the referee as matters of law and fact, and as to the damages assigned, and in his refusal to grant a new trial, and open the whole case for investigation.

This is a very novel and unusual case. The plaintiff sues his employers, the defendants, for alleged injuries to himself while in the employ of the defendants, ten years before, the suit was begun. He does not charge the defendants personally with having the slightest connection with his injuries, but seeks to build up a case against them by a series of declarations of liabilities from an indirect connection with the causes of his injuries. In order to succeed he must establish that he was employed by the defendants for a particular character of work, not the work he was engaged in, when hurt, and that he was employed by the defendants and their fully authorized agents to do just what he was doing when he was hurt, and that the work he was engaged in when he was hurt was defendants' business, and that the alleged agents of the defendants had authority to order him to do what he was doing when he was hurt, and that as

a matter of fact he could not push the car from any other than between them, and that defendants authorized agent ordered him individually to go between these cars and that he did not go between them of his own accord (and even then he was not justified in going between them), and that this accident was not the result of any negligence on his part, and that the pushing of the cars was the proximate cause of his injuries, and not his own act in getting his foot drawn under the car, and that his injuries were not occasioned by the negligence of any of his fellow servants, but of the defendants.

It will be seen that the plaintiff seeks to connect the defendants with his injuries by attempting to prove that he was in their employ to make crates only. We submit that the testimony shows that he was at the time of this accident in the employ of the defendants *getting so much a day, and not so much a crate*, and that there were no crates being made at the defendants mill at the time of this accident, or for three weeks before.

His father had received his wages, and must have known how he was being paid, to-wit, by the day at this time. All the evidence agrees that the plaintiff was not making crates when he claims that he was called to assist in the pushing of these cars.

The only witness who swears to any particular purpose for which the plaintiff was employed is his father, who says that he hired him to make crates, but does not know what other business, he was afterwards engaged in, and the plaintiff himself admits that for eight or ten days before the accident he had been engaged in other work, and he swears on cross-examination that he may have pushed cars before, and admits

that all the boys engaged in crate making had stopped some days before this accident, and that he does not know what he was hired to do. The witness Williams swears positively to the plaintiff having been hired to do day labor, and that plaintiff knew that he was employed at other work because he came and asked witness to give him other work when defendants stopped making crates, and that no man or boy was ever hired at the mill *to do any particular thing*, and that plaintiff had pushed cars before that day. The same testimony is given by the witness Joiner, as to the work plaintiff was doing, and that no crates had been made for some time.

But the most convincing proof that the plaintiff was a mere day laborer, and not hired to make crates only, is the time-book introduced and shown in evidence, proving that the plaintiff was hired by the day and how much he was paid. There was another record kept by Joiner of the crate-making. Camp denies that the plaintiff was ever employed by him to do any peculiar kind of work but his father simply wanted defendants to give the boy some work to do.

Plaintiff's witness Ross admits that more than half the time plaintiff was doing work other than making crates, and that he and the other boys were working by the day. The weight of the testimony show that the plaintiff was employed as an ordinary day laborer, and was paid by the day certainly for some time before the accident.

The next allegation the plaintiff must prove to recover was that defendants or their authorized agent compelled him to do just what he was doing when he was hurt.

The evidence of both plaintiff's witnesses and de-

fendants' witnesses proves that Williams simply, in a general way, hollered to a lot of laborers, "come and push these cars," there is not a word of testimony that this was addressed to the plaintiff, nor is there the slightest showing that he was obliged to go even then, no compulsion of any sort on him to push the cars is shown, nor even an order directed to him. A general order to push the cars is given and he goes, and gets *between the cars*, whereby he is injured. No one directed him to go between the cars, and even the general order is treated as directed to men.

There is no evidence whatever even tending to show, if he found the sides of the cars occupied and he could not get a place there, that any one expected him to go *between the cars* to push them, much less ordered him there. The evidence of defendants witnesses is that orders certainly were given these boys, and were given that day, *not to go between the cars*.

But was plaintiff in any way compelled to go between the cars, if he could not push them without going between the cars, he ought not to have pushed them at all, and reported to the superintendent why he did not. Any boy of ordinary intelligence would have done that. His going between the cars was his own negligence and hence he can not recover. Shearman & Redfield on Negligence, 25—29; 1 Addison on Torts, 460; Can not recover if ordinary care would avoid the injury. Shearman & Redfield, 29.

The evidence of Williams authority to give even the order he did give, was that he was foreman or superintendent of the *mill*, but that does not necessarily imply authority to order the employees of the mill to push cars not belonging to the mill owner and running on a track of railroad not owned by the mill owners,

and over which they had no control. When defendants employed a superintendent of their mill, they did not hire him to assist in the operation of the railroad. This order was his own act, outside of the scope of his authority, and defendants should not be held responsible for the same. Croft vs. Allison, 4 B. & Ald., 390; McKenzie vs. McLeod, 10 Bing. 385; 2 N. H. 548; 20 Conn. 284; 26 Penn. St. 482; 19 Ohio St. 110.

It is nowhere shown, except by general statements, that pushing these cars was defendants business, or that they were under any obligation to push said cars, without positive proof to the contrary, the evidence further shows that both Williams and the plaintiff were doing the work of the railroad company when this accident happened. An employee can only recover when engaged in the business of his employer.

The evidence does not show any *such necessity* in the plaintiff's going between the cars as to justify him in so doing, and that the defendants thereby became liable for any injuries arising therefrom. Plaintiff and witnesses Dupree and Ross, who seem to have been making up the case, swear that there were too many men on the rear of the cars, and on the left hand side, and the lumber was piled so close to the track that on the right hand side he could not get a place anywhere else to push. They were both boys at the time, and both on the left hand side of the car, and plaintiff was on the right hand side, and Ross was not employed at the mill at the time. Neither of them can state how many men were doing the pushing, nor any other definite facts from which the court may judge whether their statements are true or not.

Plaintiffs witness Thompson swears: There was room enough on the sides of the cars for the boys to

get positions," again "we never had no trouble much in getting positions on account of the timber." This is the evidence also of the witnesses Moore, McDonald, Williams and Joiner; and Williams enforces this by stating that the railroad company required them to keep the lumber away from the tracks, which is a well-known regulation, and much more likely to have been complied with than that the lumber should have been piled so close to the track that a boy could not get between the lumber and the car, which seems very improbable. Again the evidence shows that there were three of these cars at least, one hundred feet of length affording ample room for twenty-five to thirty men to push there on the sides and rear. The plaintiff said himself that he went in between the cars because he could not get hold of the cars "*handy*," and he *thought* it safe between the cars. The fact is that the plaintiff went between the cars needlessly, and against the positive orders of the superintendent, and ought not to recover in this case. *He* was not ordered to push the cars at all, and he certainly was never ordered to go *between* the cars.

His own negligence caused his injuries. Even a boy of thirteen may be guilty of negligence. Ewen vs. Chicago &c R. R. Co. 38 Wis. 613, 628; Lester vs. Lewiston, 62 Me. 468; 4 Allen, 283; 9 Allen, 401; 8 Gray, 123; 104 Mass. 52; 58 Me. 384; 27 Ind. 513; 40 Ind. 545; 27 Mich. 503; 40 Cal. 188; In Messenger vs. Dennie, 137 Mass. 197, (S. C. 50 Am. Reps. 295) a *boy of nine* was held guilty of negligence.

The plaintiff's own testimony shows that his own negligence or want of care after he got between the cars caused his injuries. He says: "I began pushing against the car in front. The cars were moving *slowly*,

while I was pushing *my foot slipped*, and struck against the wheel of the back car and caught my foot and right straight up my leg, etc."

There is nothing here that proves the pushing of the car caused this accident. Plaintiff's failure to stand and walk steadily caused his foot to slip under him, and under the wheel of the rear car right behind him. Clearly if he had been pushing in the center of the car, or had been watching what he had been doing, or walking with any care, no such accident would have happened. Cooley on Torts, 674; Shearman & Redfield, sec. 41; 1 Addison on Torts, 576; R. R. Co. vs. Gladman, 5 Wallace, 408.

Even granting everything plaintiff says to be true, this was no dangerous work, pushing empty cars, with no engine attached, moving according to his own statement *slowly*. Plaintiff's own negligence must have caused this accident. It was not a natural result of this work, and the work is not shown to have been dangerous, negligence is only actionable when it is only the proximate cause of the injury. Lane vs. Atlanta Works, 111 Mass. 136; Ryan vs. N. Y. Cent. R. R. Co. 35 N. Y. 210; Cooley on Torts, 679.

The main contention of the plaintiff is that Williams' orders caused his injury, and that by those orders he was put in a position of danger.

Williams was an employee of the defendants, and so was the plaintiff, as to the alleged pushing of cars, unless it was shown that this was a matter in which Williams was his superior, and had a right to order him to do the work, they were fellow servants.

It is not shown that Williams was an improper man for the position he occupied, and this is all that the employer guarantees to his other employees, they take

all other risks. Particularly does this doctrine apply in a case like this, both servants are engaged in moving anothers cars, on the railroad of another, over which the defendants had no control, and which moving of said cars was no business of theirs. A foreman may be a fellow-servant. Marshall vs. Schreiker, 63 Mo., 308; 6 Cush., 75; 62 Me., 463; 43 Mo., 187; 22 Ind., 26; 25 Md., 462.

The real substance of this case is that plaintiff brought this accident on himself, by needlessly going between those cars, paying no attention to what he was doing when he got between them, not only without orders, but against orders, and defendants had no connection with the orders or the business in which the plaintiff was engaged when hurt.

It will be further observed that this accident is said to have occurred in April, 1882, when plaintiff was thirteen years old, his services were his fathers, the cause of action was his fathers, it was not brought until ten years after the alleged injuries were received, and brought by the man himself, we submit that when he was injured that no cause of action accrued to himself, but to his father, who claims to have employed him to the defendants, and that the cause of action is long since barred.

BRIEF OF GEO. P. RANEY IN BEHALF OF APPELLANTS.

I. The ruling upon the demurrer to the amended declaration was erroneous and should be over-ruled and the judgment reversed, for the reason that the declaration does not allege that the defendants owned, operated or controlled the railroad or its cars or had authority to do so. That the defendants did do so, or had authority to do so, is not merely a matter of evi-

dence nor a matter of which the court can take notice ex officio, nor a matter which would more properly come from the defendants, or, in other words, matters anticipating defendant's reply; nor a matter necessarily implied in or from anything that is alleged in the declaration, not a matter which the law will presume, nor a matter whose averment involves great perplexity or is, for other reasons, unnecessary; and consequently an allegation of such ownership, operation, control or authority is necessary. We are dealing with a question of pleading, and respectfully ask the court's attention to the fact that the allegation is not one on which the rules of pleading render unnecessary. Stephen on Pleading Rule 7, m. p. 334, and m. p. 341–375, and 322–4.

The declaration should show that the movement of the cars was a matter of defendant's business. The declaration does not show any such general control of the plaintiff by defendant as made it liable for the negligence of Williams, the foreman, if the movement of the cars was not a matter of defendant's business or control. In the absence of such allegation the declaration was materially deficient and the demurrer should have been sustained. Mann vs. O. P. Works 11 R. I, 152; Woods Law of M. and S. Sec. 279–80; Church vs. Mansfield 20 Conn. 284; Wright vs Wilcox 19 Wind. 343; Mow vs. Consumers Ice Co. 73 N. Y. 543; Irasco vs. 3rd No. R. Co. 47 N. Y. 122; Mali vs. Lord 39 N. Y. 361; Vanderbilt vs. Richmond T. Co. 2 Comst. 479; Lyons vs Martin 8 Ad. & El. 512; Thomas S. B. Co. vs. Housatonic R. Co. 24 Conn. 40; 63 Am. Dec. 154; Poulton vs. London R. Co. 2, L. R. Q. B. C. 534.

The declaration does not, consequently nor at all, show that the act of the foreman was within the scope

of the authority either express or implied, conferred on him by defendants. Cases, *supra.*

II. The demurrer above referred to having been well taken the testimony objected to on the line of such demurrer was improperly admitted and should have been excluded.

III. The verdict is contrary to and not sustained by the evidence. It will be observed that the plaintiff no where states that he was not at the time of the accident aware of the danger attendant upon his going between the cars; nor does he say that he had never pushed cars before or for the purpose for which these were being pushed, he merely does not remember having done so. He had been working about the mill for several months, and the testimony of Oliver Joiner shows positively that he had pushed cars previously and that of Williams is confirmatory of the fact that he had; and the natural inference in view of the stated character of plaintiffs testimony and his opportunities for knowing and appreciating the dangerous character of the work of pushing cars, is that he did appreciate it. He says that on account of the lumber on the right hand side, which he found so "clustered" with lumber piled up so that he could not safely walk on the right side of the car alongside of the car and do his duty, he went in between the cars as he thought it would be safer than on the side; and that he further says that he probably would not have gone between them if there had not already been a man there, and for which reason he thought it would be safer for him than to stay on the right hand side. What he probably did or would not have done is of course not testimony. The fact that he weighed the comparative

danger of the two positions, shows appreciation of the danger.

Again he does not deny that Williams cautioned him. He says Williams said: "Come on boys and help push the cars, hurry up," and continuing he says: "I do not remember anything else that he said." This testimony is not an assertion that Williams did not caution him, nor that he did not hear the caution. It did not justify the Referee in concluding, in the face of the positive testimony of defendant's witnesses to the contrary, (see testimony of Barrett as well as others. Barrett says that the plaintiff was told not to go between the cars.), that the alleged caution was not given by Williams and heard and appreciated by plaintiff.

On the same line it should be observed that his statements, that according to his recollection this was the first time he had helped to push cars and that he has no recollection of helping at any other time, is a mere statement of the condition of his memory on the 22nd day of June 1891, as to such matter and that he did not then recollect differently; and not a sworn statement that the facts and conditions really existing were not inconsistent with his recollection. There being positive testimony that he had done such work before, the referee was not justified in any other conclusion than that he had, and that his memory was treacherous as to this point and the same conclusion obtains as to the conditions existing on the right hand side of the car, and as to which he says: "there was no one that I remember on the right hand side, I can not say positively there was no one pushing on the right hand side." The fact is the manifest weakness of the plaintiff's memory, and his unwillingness to as-

sert the contrary, are obvious. He admits the change of employment to have been made 8 or 10 days before the accident. He does not know how many men were pushing at the rear end of the car or who they were; nor is there anything in his testimony even tending to support the conclusion that there was not space at the rear end of the cars, that were being moved, for him to have shoved at.

The plaintiff's witness Dupree does not state that Williams, the foreman, did not caution the plaintiff, and upon the subject of the plaintiff ever having done this sort of work before he merely says he never knew him to push railroad cars before.

Reuben Thompson says the cars were partly loaded, and so does Ross.

Thompson also says there was room enough on the sides of the cars for the boys to get position; that lumber "was piled on both sides of the track and some pretty close to the track.————— We had no trouble much in getting position on account of the lumber." Thompson was manifestly pushing on the right hand side of the track for in speaking of the accident he says : "We heard him hollering—in fact I saw him right down under the side of the car in front of me." Thompson nowhere says that Williams did not give the warning claimed by defendant to have been given, nor that the plaintiff had not done similar work before.

W. H. Ross says, that in latter part of 1882 and spring of 1883, the plaintiff spent about half of his time in making crates and the balance in working around the mill mostly helping about the planer, taking away lumber, putting it on a poney truck and carrying it out and stacking it up in piles. As to push-

ing railroad cars he says the boys had been used be-
fore in pushing, but very seldom and he had never
seen the plaintiff engaged in pushing them before that
time; that he might have been with them but witness
never noticed him. He says nothing on the point of
the warning by Williams. His statement is that the
right hand side was in very bad condition by lumber be-
ing thrown carelessly along the side of the track, so bad
a condition that a man could not push the cars with
convenience without walking on scattered lumber.

The witness Jno. C. DuPree says the plaintiff had
to stand between the cars to push because the lumber
was piled so close to the track on the right hand side
that there was no room for him between the cars and
the lumber, and it was crowded on the left hand side
with other men so that he could not stand on that side
and he could not stand back of the rear car because it
was crowded there. That the lumber was piled so
close to the track on that side that a person could not
go between it and the cars. He also says he saw
plaintiff when he was hurt. He says the cars were
empty, that from his position he could not see be-
tween the cars. He had to say the cars were empty to
give any pretense of credibility to his statement that
he saw plaintiff when he was hurt. Asserting that
his recollection was perfectly clear as to everything
that transpired on that occasion, he yet cannot say
what time of the day it was, but thinks it was in the
afternoon, does not remember what day of the week it
was; cannot state the names of those who were mak-
ing crates at the time except plaintiff (who says he
was not doing so); cannot state which car he was push-
ing, nor can he locate himself more definitely than
that he was on the left hand side near the middle of

the two cars; says that he guesses from the way he was pushing he could not see the rear end of the car unless he looked back; and that he did not look back ; he does not know on which side or where Williams was standing; nor how many men were on the left hand side; J. P. Hall, the plaintiff's father, is the only remaining witness of the plaintiff and he does not pretend to know any thing about the conditions existing or what occurred at the time of the accident.

We respectfully ask the court for a review of the judgment of the lower court, on the ground that the testimony in behalf of the plaintiff does not justify the conclusion reached by the Referee; and because a proper analysis of it, would, in view of its indefinite character, when weighed in the light of the positive character of testimony adduced in behalf of the defendants have lead the Referee to refuse to find for the plaintiff and to have found for the defendant. There is not in our judgment sufficient testimony to sustain the verdict, and the rule governing in cases where one party does not remember and the other does dictates a reversal of the judgment. The finding of the Referee is clearly contray to the legal effect of the evidence considered as an entirety.

The defense is not justified in finding either that the plaintiff was not warned or did not appreciate the danger. Prior experiences and his silliness as to not appreciating the danger and his expressions as to why he went between the cars, dictate a judgment for the defendants upon a fair consideration of the entire case as the only conclusion inferable to the testimony.

It is not indispensable that a minor should be cautioned.   Howell vs. Ill. Cent. R. Co. 36 L. R. A. 545;

Cleveland vs. Tartt 64 F. R. 830; Headman, etc., vs. Speler, 33 N. E. 544. (145 Ill. 329).

The only part of the declaration that can be referred to or alleged and attempting to allege that the cars or the side or railroad tracks, or the pushing or loading of the cars was a part of defendants business or under their control is that as to plaintiffs being ordered to assist in "pushing certain lumber cars which were on the side track of a railroad in proximity to said saw mill, which workmen regularly employed for the business, were engaged in loading with lumber from the mill and moving on the said road track." This part of the declaration fails entirely when judged by the rules of pleading.

There is no allegation that the lumber cars, or the side track or railroad, though in proximity to defendants mill, were even in the possession or control of defendants or that the men engaged in loading them were in the employ or control of defendants for such business or at all, or that such men were employed or engaged in loading or moving cars for defendants, and this is so although the lumber was being loaded from defendants mill. Such possession, employment or control or that such loading or moving of the cars, was being done for or by authority of defendants, may be assumed independently of the stated clauses of the declaration but cannot be found in its aver-ments. Everything alleged therein can exist independent of the defendants business, control, possession or authority. The relaxation of the rule as to certainty of allegation allowed with respect to time, place and quantity does not generally extend to other

particulars.  Stephen Pl. *m. p.* 342.  The facts creating liability under the law must be alleged; Ib. 348.

Matter the affirmation our denial of which is essential to the apparent or prima facie right of the party pleading, should be affirmed or denied by him in the first instance though it may be such as would otherwise properly form the subject of objection on the other side, Ib. 352.  There is an entire absence of any such allegation of the movements of the cars, etc., being defendants business, and consequently of all ground for invoking the rule that a general mode of pleading is often sufficient where the allegation on the other side *must* reduce the matter to certainty, Ib. 359, 366.  It can not be said that the nature of the thing does not conveniently admit of its being alleged, or alleged distinctly and particularly, Ib. 368.

The rule that less particularity is required where the facts were in the knowledge of the opposite party than the party pleading does not permit omission of allegation of facts essential to recovery; such is not its character or purpose, as is illustrated in the case of allegations of title in an adversary, Ib. 370, 322-24. The absent allegation does not relate to matter of inducement of aggravation, nor would the declaration be sufficient if it did, Ib. 372.  The allegation made is worse than doubtful or ambiguous in meaning and vitiates the declaration, Ib. 378-80.  It is not good enough to merit being called simply argumentation. Ib. 384.

The plaintiffs was hired to defendants to be engaged in making crates, paying so much per crate.  Williams' was the foreman of the mill, and plaintiff was under the direction, control and orders of Williams as the foreman and agent of defendants in their said

·saw mill." Williams by his authority as foreman ·and agent in the mill was not the representative of defendants in putting him at any work not the business ·of defendants, or not within the scope of Williams' .agency. Mann vs. O. P. Works 11. R. I. 152.

*King & King*, for Appellee.

CARTER, J.:

After a thorough re-examination of this case, aided ·by the elaborate oral arguments and briefs of the parties appellant and appellee, we are all of opinion that the conclusions reached upon the former disposition ·of the case were correct, and that the judgment of the ·court below should be affirmed.

I. It is contended by the first assignment of error that the court below erred in overruling the demurrer of the defendants to the plaintiff's amended declaration. And it was very earnestly and confidently argued before us that the demurrer, particularly the second, third and fourth grounds thereof, was well taken, but we entertain a different view, and in discussing this assignment of error we will consider each point of law endorsed on the margin of the demurrer, in consecutive order.

A. It was unnecessary for the declaration to show that Williams had exclusive control and authority ·over plaintiff at the time of the alleged accident. It was entirely sufficient that Williams had at the time authority to command plaintiff to do the act resulting in the injury. The law does not confine the master's liability to those cases only, where his servant is invested with exclusive authority to do a particular act, or to exercise a particular control, because

the master may appoint as many agents as he pleases to execute or superintend a particular work, and the acts of each, within the scope of his authority, will be binding upon the principal, unless the authority be a joint one only. Mechem on Agency, secs. 76, 77; Wood on Master and Servant, sec. 448. This ground of demurrer did not question the sufficiency of the allegations of the declaration showing that Williams had at the time authority to command plaintiff to do the act which it was claimed resulted in his injury. It was, therefore, properly overruled.

B. The second ground of demurrer contended that it was shown by the allegations of the declaration that plaintiff's injuries were received in consequence of the negligence of a fellow servant, and not by reason of the negligence of the defendants. The rule is well settled in this State, as well as in the United States and England, that in the absence of statute a master is not liable to his servant for personal injuries received in the course of his employment, through the negligence of a fellow servant, when engaged in the same undertaking or common work. Parrish vs. Pensacola & Atlantic Railroad Co., 28 Fla. 251, 9 South. Rep. 696; South Florida Railroad Co. vs. Price, 32 Fla. 46, 13 South. Rep. 638; South Florida Railroad Co. vs. Weese, 32 Fla. 212, 13 South. Rep. 436; Duval, Receiver, vs. Hunt, 34 Fla. 85, 15 South. Rep. 876. From this general proposition there is no dissent; but when we undertake to analyze it, and attempt to define what is meant by the terms "fellow servant," and "same undertaking or common work," we find the courts and text writers very inharmonious. There are, however, certain duties required of a master to his servant, which if left unperformed, or negligently performed,

and personal injury results therefrom to such servant, without his fault, will entitle the latter to recover damages; and among such duties are those requiring the master to furnish reasonably safe machinery and other appliances, and a reasonably safe place to work; and instructions and warnings against special dangers attending hazardous duties, to all servants who, from youth, inexperience or imbecility, are ignorant of such special dangers. Bishop on Non-Contract Law, secs. 644, 648, 651; 1 Lawson's Rights, Remedies and Practice, sec. 309; Beach on Contributory Negligence, secs. 346, 362; Thompson on Negligence, p. 972, sec. 3, p. 978, sec. 8; Shearman & Redfield on Negligence, secs. 194, 203, 219; McKinney on Fellow Servants, sec. 24; Wood on Master and Servant, secs. 329, 349, 350. And it is generally held, and we hold, that these, among other duties, are of a personal nature, and if the master delegates them to another servant, no matter what his title may be, nor what his grade or rank in the master's service, the master will be responsible for their non-performance, or for their negligent performance, notwithstanding the master has exercised due care in the selection of the agent to whom these duties are intrusted. Bishop on Non-Contract Law, secs. 665, 667; Beach on Contributory Negligence, sec. 356; Shearman & Redfield on Negligence, sec. 204; McKinney on Fellow Servants, secs. 23, 24, 42; Wood's Master and Servant, sec. 438; 3 Wood on Railroads, secs. 377, 380, 399 a. Baltimore & Ohio R. R. Co. vs. Henthorne, 19 C. C. A. 623, 73 Fed. Rep. 634, 43 U. S. App. 113. If these principles be applied to the present declaration it will be found that this ground of demurrer was not well taken, because even if Williams was a co-servant with the plaintiff, yet as he was in-

trusted by the master with certain *personal* duties due from the master to plaintiff as his servant, the master is, nevertheless, liable for their non-performance, or negligent performance. Plaintiff, a boy less than fourteen years of age, employed only for the special purpose of making and putting together fruit and vegetable crates at defendants' saw mill, an employment light, simple and capable of being performed by a child without risk of injury from the dangerous machinery employed in the mill, was placed by defendants under the direction, control and orders of Williams, the foreman and agent of the defendants in their said saw mill. The relations of Williams to defendants and to plaintiff being as thus stated, he was representing the defendants when he gave instructions to plaintiff to discontinue the harmless employment of making vegetable and fruit boxes, for which he was employed, and to engage in the dangerous employment of pushing lumber cars on a side-track, for which he was not employed, and it devolved upon him to perform that personal duty of the defendants which required them to furnish plaintiff a reasonably safe place to work; and the plaintiff being an inexperienced youth, "not capable of appreciating the risk to his person from the dangerous work he was ordered to perform," and not knowing or apprehending any danger as alleged, was also entitled to instructions, information and warnings of the special dangers of such work, before being instructed to perform it. The instructions of Williams to engage in such work, and his failure to warn of the dangers attending it, were, under these circumstances, instructions and failures on the part of the defendants, though proceeding from a co-servant of the plaintiff. Wood on Master and Servant, sec. 448.

C. The third and fourth grounds of the demurrer are properly considered together. There is no general specification that the declaration is "vague, indefinite and uncertain," although much of appellants' argument was based upon such a specification. The third ground of demurrer insisted only that the declaration was vague, indefinite and uncertain, in that it failed to allege the name of the railroad owning, controlling or operating the railroad or the cars mentioned in the declaration, and failed to allege that defendant controlled, owned or operated, or had authority to operate said railroad or cars, and the fourth ground insisted that the parties operating and controlling the railroad would be liable for plaintiff's injuries, and not the defendants. The allegations of the declaration show that the defendants were conducting a saw mill business at the town or station of Campville; that Williams was the foreman and agent of defendants in their said saw mill, and as such had control over plaintiff who was subject to his orders; that when the particular order complained of was given, workmen regularly employed for the business were engaged in loading lumber cars *with lumber from the mill*, and moving them on the side-track of a railroad in proximity to the mill; and it was these cars which were then being loaded with lumber from the mill which plaintiff was ordered by Williams, the foreman and agent, to assist in pushing. Now, it is clear that the question of defendants' liability is not to be determined by the question of their ownership or operation of these cars, but by the question, whether Williams, when he gave the order to plaintiff, was engaged in his master's business and acting within the real or apparent scope of his authority; or, in other words, did Williams

have actual or implied authority from his masters to order the cars to be moved on the side-track; and, if so, was he at the time he gave the order engaged in the line of his duty in his masters' business. We think it is equally clear that the foreman and agent of the owner of a saw mill necessarily has authority to move, or direct the moving of, cars being loaded with lumber from the mill where they are located on a side-track in proximity thereto, whenever he thinks it necessary, either for more convenient loading or for the convenience of the mlll, and that, too, whether his principal or some third party owns, or operates, or controls the cars or the side-track upon which same are located. An allegation that defendants owned or operated the cars, would have furnished additional evidence of Williams' implied authority to move them; while an allegation that some one else owned or operated the cars or side-track, would not have furnished evidence sufficient to destroy Williams' implied authority to move them in the manner alleged. The rule of law is that a master is liable in tort for all acts of his agent performed in his master's business, within the real or *apparent* scope of his employment; that is, within the express or *implied* powers given him. This rule is, so far as we have been able to find, universally acknowledged, and none of the cases cited by appellants decide differently, although in some of them the rule is not stated so broadly. Mr. Mechem (Agency, §735) states the rule as follows: "If, upon investigation, it be found that the agent was acting as such, within the apparent scope of his authority, and in the performance of his undertaking, the principal is liable for the agent's negligent omission or commission, although the agent was not authorized to do the

particular act complained of, or had received express instructions not to do it." See, also, opinion by Judge Cooley, in Chicago & Northwestern Ry. Co. vs. Bayfield, 37 Mich. 205; Wood on Master and Servant, section 307; Bishop on Non-Contract Law, section 609. It being within the apparent scope of Williams' authority to remove or direct the removal of these lumber cars in the manner alleged, the plaintiff—a child—is not to be blamed if he, acting upon that precept so universally instilled in children—obedience—undertook the task of assisting in moving them, assigned him by his superior.   It did not devolve upon plaintiff, even if he had sufficient discretion to do so, to stop and inquire as to the express authority of Williams to move these cars; he was justified in acting upon Williams' implied or apparent authority in this respect.   The defendants by delegating to Williams the authority to control, order and direct a child employee can not complain if they are called upon to respond in damages for injuries caused by a negligent order or direction given by him within the apparent scope of his authority, in furtherance of his master's business, and sought to be performed in good faith by the child.   The plaintiff being under the direction, control and orders of Williams, the foreman and agent of defendants, and the allegations of the declaration being sufficient to show that Williams had apparent authority to direct the removal of these cars, even if he abused the authority given him over plaintiff, by directing him to engage in this hazardous work, yet as he did not exceed such authority, he was in what he did a representative of the defendants, and should have performed the personal duty of cautioning against danger devolving upon the defendants.   Wood

on Master and Servant, §439; Beach on Contributory Negligence, §327; Thompson on Negligence, p. 975, §5; p. 976 §§ 6, 7; Shearman & Redfield on Negligence, §233; Norton vs. Volske, 158 Ill. 402, 41 N. E. Rep. 1085, S. C. 49 Am. St. Rep. 167.

D. The demurrer did not question the sufficiency of the declaration as a whole, or the sufficiency of its allegations as to Williams' authority to direct the removal of the cars (unless, perhaps, inferentially by the third and fourth grounds), although appellants' argument here is based almost exclusively on these grounds, it being insisted that the declaration was faulty in that it alleges evidentiary matters of the ultimate facts, instead of alleging the ultimate facts themselves, *i. e.*, that defendants did the act complained of either by themselves or by a duly authorized agent acting in the line of his duty. This latter contention is no doubt true, but as the evidentiary facts alleged are sufficient, if true, to establish conclusively the ultimate facts, the defect in this respect is one of form, and not one of substance. If the evidentiary facts alleged were insufficient in law to establish the ultimate facts, the defect would be one of substance, proper to be reached by general demurrer, but if the objection be simply to this *manner* of pleading the ultimate facts, the defect is one of form, and could formerly be reached by special demurrer only. The statutes of Elizabeth and Anne distinguished between matters of substance and matters of form in pleading, and required a special demurrer in order to take advantage of defects in the latter. Stephens on Pleading, sec. 107; 1 Chitty's Pleadings, pp. 694–6; Gould's Pleadings, pp. 433 *et seq.* Our Legislature, following the English Common Law Procedure Act, by sections 14

and 15, Chapter 1096, act of 1861 (sections 1050 and 1040 Rev. Stats.) enacted "that either party may object by demurrer to the pleading of the opposite party, on the ground that such pleading does not set forth sufficient ground of action, defense or reply, as the case may be, and when issue is joined on such demurrer the court shall proceed and give judgment according as the very right of the cause and matter in law shall appear unto said court, without regarding any imperfection, omission, defect in or lack of form; that no pleading shall be deemed insufficient for any defect which could heretofore only be objected to by special demurrer." The effect of this legislation was to abolish special demurrers, and to exclude all objections to pleadings which could theretofore only be taken by special demurrer, *i. e.*, defects in form, unless the pleadings should be amendable to the remedy by motion to strike out or amend, given by section 16 of the same act (sec. 1043 Rev. Stats.), which provides "that if any pleading be so framed as to prejudice, embarrass or delay the fair trial of the action, the opposite party may apply to the court or a judge to strike out or amend such pleading, and the court or judge shall make such order respecting the same, and also respecting the costs, as such court or judge shall see fit. Wade vs. Doyle, 17 Fla. 522; Liddon vs. Hodnett, 22 Fla. 271; City of Orlando vs. Heard, 29 Fla. 581, 11 South. Rep. 182; Cuthbertson vs. Irving, 4 Hurl. & Nor. 741; Pinhorn vs. Souster, 8 Welsby, H. & G. 138; Brine vs. Great Western Ry. Co., 2 Best & Sm. 402; Grafflin vs. Jackson, 40 N. J. L. 440. If the matter pleaded be in itself insufficient without reference to the manner of pleading it, the defect is one of substance, but if the only fault is in the form of alleging

the matter, the defect is formal. Gould's Pleadings, p. 435; 7 Bacon's Abr., *title* Pleas and Pleadings, (N). 5. In this case the matter pleaded was sufficient, and the defect, if any, was in the form or manner of alleging it. This defect was not available on demurrer, and as no motion to strike out or amend was made, we can not hold the declaration bad on that account. Hancock vs. Noyes, 9 Exch. 388.

II. It is insisted that the referee erred in admitting certain testimony, objected to; showing that the injury occurred while plaintiff was assisting in moving cars on a railroad side-track at defendants' mill, on the ground that there was no allegation in the declaration that defendants controlled, owned or operated said cars, or that the cars were being moved either by direction of defendants, or by their foreman acting within the scope of his authority. These objections were properly overruled because, as shown in the preceding paragraph of this opinion, the declaration was sufficient to admit this testimony as against these objections.

III. Another assignment of error is based upon the action of the referee overruling an objection to a question propounded to a witness, on the sole ground that the same was leading. The objection is not mentioned in appellants' brief here, and must, therefore, be considered as abandoned. Other objections to the question are argued here, but we can not consider them because appellants are confined to the objections made in the court below. J. T. & K. W. Ry. Co. vs. P. L. T. & M. Co. 27 Fla. 1, 9 South. Rep. 661; Tuten vs. Gazen, 18 Fla. 751.

IV. The referee sustained objections to the following question propounded by defendants to their wit-

ness Williams : "State whether or not the injury received by the plaintiff which necessitated the amputation of his leg was caused by his own negligence or carelessness ?" The referee did not err in this ruling. The question called for the mere opinion of the witness on a material issue of fact, presented by the pleadings and evidence, which issue it was the province of the referee to settle, subject to the principles of law controlling the issues. Watrous vs. Morrison, 33 Fla. 261, 14 South. Rep. 805; Thompson on Trials, sec. 377.

V. It is further insisted that the referee erred in refusing to grant a new trial upon the ground that the finding and judgment was contrary to the law and the weight of the evidence. There was evidence from which the referee could have found these facts, *viz* : that plaintiff, a boy batween thirteen and fourteen years of age, was hired by his father in the latter part of 1882 to the defendants to make vegetable and fruit crates in a shed "off to itself, but attached to" defendants saw mill; and for no other purpose, and the father never knew until his son was injured that he was ever required by defendants to do any work more hazardous than making crates; and in the month of April, 1883, plaintiff, with the other workmen at the mill, was under the full and exclusive control and supervision of one Williams, foreman of defendants' mill, who was superintending and directing the work of pushing two lumber cars on the side-track to be loaded with lumber from the mill, for the defendants. Plaintiff and other young employes were near the crate shelter, pushing little tram cars, and Williams called out to these boys to assist in pushing the lumber cars on the side-track eight or ten steps away, which were too

heavy to be moved by the regular hands used therefor. The left side and rear end of the two cars coupled together were so crowded with men and the right side so near lumber piled close to the side track that plaintiff could not secure a place to push, and seeing a man between the cars, and thinking that a safer place, he went in there, and while pushing, his foot slipped, and the rear car ran over his leg and ground it to pieces, and it was amputated that day, and about ten days afterwards further amputation was necessary. Plaintiff was confined to bed about four months, and to the house about eight months, though since that time he has never suffered from the wound. Plaintiff had never helped to push lumber cars on the side-track before, though for ten days before the accident the work of making crates had been discontinued and he had been put to cleaning up shavings around the planer. No warning of danger, in going between the cars, or in doing the work ordered, was given plaintiff. No instructions were ever given plaintiff as to the danger of such work, though it was proven that Williams, foreman, knew it was very dangerous to go between the cars, and had often warned men not to do so. These facts are sufficient to support the finding of the referee. It is true there was testimony contradicting these facts in almost every important particular, but it was the duty and province of the referee, and not of this court, to determine the truth of the matter; and as the finding of the referee is entitled to the same weight as the verdict of a jury, and there is no such preponderance of evidence as will justify the inference that the finding was based upon influences other than a due consideration of the evidence, we are not justified in disturbing that finding

on the facts. Marshall vs. Bumby, 25 Fla. 619, 6 South. Rep. 480; Moulie vs. Hughes, 28 Fla. 617, 10 South. Rep. 94; State *ex rel.* Sanchez vs. Call, 36 Fla. 305, 18 South. Rep. 771; McClenny vs. Hubbard, 20 Fla. 541; Richardson vs. Russ, 14 Fla. 463; Holland vs. Holmes, 14 Fla. 390.

It is insisted, however, that plaintiff's own negligence was the real cause of his injury. We are again confronted with the finding of the referee against appellants on this point. It is perfectly clear that but for the order given plaintiff by Williams, the foreman, to assist in pushing the cars, plaintiff would never have gone between the cars; neither would he have been injured. Plaintiff had never been warned of the danger which is clearly shown of going between moving cars; he had never had any experience in pushing lumber cars; he was a mere boy and presumptively wanting in discretion; there was no convenient place from which he could perform the duty assigned him except between the cars; he had the example before him of a man, engaged in the business and familiar with its hazards, occupying the same position which he took, and this work being outside of his employment and much more hazardous than his regular employment, we can not say that as a matter of law he was guilty of any negligence in obeying the orders of his superior. When a person authorized by the master to control and direct another youthful and inexperienced servant, directs the latter to perform a dangerous service not in the line of his employment, without warning or instructing him as to the danger of the particular service, the obedience of the latter servant will not be contributory negligence on his part, and he will be entitled to recover for any injury which may

occur by reason of the failure to warn or instruct. The rule may be even broader than we have stated it, but this statement fully covers the present case, and is well fortified by authority. Wood on Master and Servant, sec. 448; Beach on Contributory Negligence, secs. 358–362; Shearman & Redfield. on Negligence, sec. 219; Orman vs. Mannix, 17 Colo. 564, 17 L. R. A. 602, and note; Fort vs. Union Pacific R. R. Co. 2 Dill. 259, S. C. 17 Wall. 553; Combs vs. New Bedford Cordage Co., 102 Mass. 572, S. C. 3 Amer. Rep. 506; Dowling vs. Allen, 74 Mo. 13, S. C. 41 Amer. Rep. 299; McKinney on Fellow Servants, sec. 39; Wood on Railroads, sec. 380 a. Norton vs. Volzke, 158 Ill. 402, 41 N. E. Rep. 1085, S. C. 49 Am. St. Rep. 167.

VI. It is also contended that whatever rights of action arose from this injury accrued to plaintiff's father, and not to the plaintiff; and that this right of action in the father was barred by the statute of limitations, though it is not pretended that if the plaintiff had any right of action, that it was barred. And it is insisted that as plaintiff was a minor, the father was entitled to his services, and having hired him to defendants, the father only was entitled to sue for damages for the injury. The character of the injury received by plaintiff was of a permanent nature, necessarily affecting him for life. At the time of the institution of this suit plaintiff had reached the age when his father was no longer entitled as a matter of law to the services of his son, and notwithstanding any rights his father may have had to recover damages for such injury, it is very clear that if the injury is permanent, and continues to disable plaintiff after his majority, and after all control of the father over him has legally ceased, and was caused by negligence, that he can also recover dam-

ages for the same.   We are not now dealing with the measure of damages to be recovered in such cases by parent and child, respectively, but whether any damages at all may be recovered by the child under these circumstances.   Shearman & Redfield on Negligence, secs. 115, 763, 764; Pratt Coal and Iron Co. vs. Brawley, 83 Ala. 371, 3 South. Rep. 555, S. C. 3 Am. St. Rep. 751; Central R. R. Co. vs. Brinson, 64 Ga. 475; Wilton vs. Middlesex R. R. Co. 125 Mass. 130, 2; Thompson on Negligence, sec. 16, p. 1242; paragraph 3, page 1260.

It is proper to state that the cause of action in this case arose prior to any statutory enactments concerning fellow servants in this State.

Judgment affirmed.