C. B. McLEOD, DOING BUSINESS AS LIVE OAK FURNITURE COMPANY, *Plaintiff in Error,* v. THE CITIZENS BANK OF LIVE OAK, A CORPORATION, *Defendant in Error.*

1. Where a cause is referred and the Referee hears the witnesses and sees them testify, his findings of fact are entitled to the same weight as the verdict of a jury.

2. Where there is evidence to support the finding of, a Referee, it will not be disturbed or set aside by an appellate court as being against the evidence where its propriety depends entirely upon the credibility of witnesses.

3. Pleas in abatement, as they do not deny the merits of plaintiff's claim, but merely tend to delay the remedy, are not favored, and the greatest strictness is applied to them, and they will not be aided in construction by any intendments.

With them correctness of form is matter of substance, and any defect of form is fatal.

4. Where a plea in abatement does not conform to the rules established as to such plea, the plaintiff is not compelled to demur to it, but may treat it as a nullity and have it stricken on motion.

5. A plea of non-joinder of persons as defendants is defective in failing to state that the defendants who have been omitted are within the jurisdiction of the court, and in not stating, in an affidavit verifying the same, the places of residence of such persons.

6. A plea of non-joinder of persons as defendants is defective because it does not aver that the omitted defendants are still alive.

7. A plea of non-joinder of co-partners is defective when it fails to show that the defendant was in partnership with the persons who have been omitted at the time of the making of the note sued upon.

8. Rule 21 of the Supreme Court Rules provides: "*In addition* to the submission of a cause on briefs as provided by the rules of this court, either party may orally argue the case, if desired, in which event a *memorandum* for such oral argument shall be filed with the clerk at the time of filing briefs." *Held,* this rule contemplates the filing of a memorandum separate from, and not merely endorsed upon, the briefs.

This case was decided by Division B.

The facts in the case are stated in the opinion of the court.

*F. W. Butler,* for Petition.

REHEARING.

PARKHILL, J.—A petition for rehearing having been filed herein, it is contended that Barton, who was then the partner of McLeod, was likewise the President of the Citizens Bank of Live Oak and was acting in such capacity and therefore the agent of such bank. It is also contended "that not only, as said by this court in its opinion, 'that Mr. Barton was to draw a partnership draft for $3,000.00 to be deposited with the bank, five hundred of which was to be credited to the defendant or applied for defendant in payment of the shares of stock,' but the evidence of every witness concerning said draft was that said draft was deposited with said plaintiff bank for collection, and the money therefor was actually received by said bank, *  *  *" which testimony must not have been considered by the court, as it fully established the contention of defendant, that the money was received by the bank and its president, J. B. Barton."

The question presented in this case is, not whether the draft for $3,000 was drawn and deposited by J. B. Barton merely, but whether five hundred dollars thereof was deposited by or for the credit of the defendant McLeod. The testimony of the witness, Barton, quoted in brief of counsel is, "I deposited it to *my credit.*" And counsel, in their brief, make the statement, "the said Barton in response to question as to what was done with the money obtained on the $3,000 draft testified: "I drew it and placed it to *my* credit." Counsel seem not to have appreciated the effect of a deposit of the $3,000 to *Barton's credit* and not to *McLeod's* credit.

The draft referred to above is as follows:

"The Citizens Bank of Live Oak.

Live Oak, Fla., Sept. 5, 1907.

On demand pay to the order of Citizens Bank of Live Oak $3,000.00 Three Thousand no/100 Dollars, and charge same to account of

Barton & McLeod.

J. B. B.

To West Flynn & Harris Co.

Jax. Fla."

The defendant, McLeod, contends and testified, "Five hundred dollars of this draft was charged to me as a member of the firm. $2500.00 was charged to Mr. Barton." But is this statement true, or was the Referee justified in finding that five hundred dollars of this draft never was charged to McLeod or deposited with the bank to McLeod's credit at all or in part payment of ten shares of the stock of the bank?

Arnold P. Mickler, Cashier of the Citizens Bank of Live Oak, was asked the question: "Please state whether Mr. McLeod or any one for him paid the Citizens Bank the sum of $500.00 or any other sum on account of ten shares of the capital stock in controversy in this suit as a part of the purchase price thereof?

The witness replied "No sir, they did not."

J. B. Barton, the partner of McLeod and the President of the Citizens Bank, testified as follows: "There was nothing said between us" (McLeod and Barton) "in reference to paying $500.00 on account of the capital stock for Mr. McLeod in the bank. We never had no such conversation as testified by Mr. McLeod on the stand this morning. I did not instruct Mr. Mickler then or at any other time to issue stock to Mr. McLeod and that I would

give him a draft for it the next morning, and pay $500.00 on account of Mr. McLeod to be applied on the capital stock. I never have paid $500 on that account on that day or any other day."

To Mr. Barton was propounded the following question: "You have testified, I believe, that you did not pay $500.00 or any other sum to the bank on account of Mr. McLeod. I will ask you what you did with the money, the $3000.00 represented here by this draft?" The witness answered: "I drew it and placed it *to my* credit. Mr. McLeod had an interest in that money, it was a company draft. He should have had credit for $500.00 of it. *I had a note* of his for $500.00 and he was subsequently paid back this money on credits between me and him, the whole amount $1500 and interest. I think this settlement in which he was paid back this money was in the latter part of February. It was sometime in February the business was closed up by a mortgage and he was given credit in the settlement for $1500, one-half of the $3000.00 draft." The witness was asked: "And then as I understand you did not pay $500 to the Citizens Bank for the stock, but you later by agreement with Mr. McLeod applied it as a credit to his personal account?" The witness answered: "Yes sir."

Mr. Barton testified further that "at the time of the settlement with Mr. McLeod I did not know Mr. McLeod held a receipt for $500. * * * I discussed with Mr. McLeod selling him stock, but I did not go into any contract with him. And I never received $500.00 for the purchase price of that stock. As a matter of fact, Mr. McLeod never became a stockholder in the bank."

We fail to see how the defendant's claim is strengthened by the fact that his partner, Mr. Barton, was the president of the bank, also. Mr. Barton was not acting

for the bank when he drew the draft for $3,000.00. He was acting for the firm of Barton & McLeod. If Barton promised his partner McLeod to deposit five hundred dollars in the bank to his credit and *failed to do so,* the bank never received the money and cannot be held responsible therefor. Suppose McLeod had given Barton $100,000 to deposit in the bank for him and Barton failed to do so, but appropriated it to his own use, could it be said the bank is liable to McLeod for the deposit that was never made? We think not.

It is further contended that the court erred in holding that the defendant could have demanded five shares of the capital stock, whereas the subscription for the shares was an entire contract. This was not a question to be decided in this case, and we only mentioned it as a circumstance to throw light upon the contention of the defendant that he had paid five hundred dollars for the bank stock. Perhaps we were misled in this regard by the fourth of the defendant's sworn pleas, wherein he alleged that the plaintiff did offer for sale and agreed to deliver to the defendant *five* shares of its stock for the sum of one hundred dollars per share, and defendant agreed to take said five shares of plaintiff's said bank stock, &c. In addition to the statement of witnesses that defendant has never paid the five hundred dollars as claimed, we may say it seems strange that the defendant has never offered to make the other payment of five hundred dollars for the stock, though he says he was ready, able and willing to pay the deferred payment. He says the Citizens Bank has never called on him for the deferred payment, and never notified him that any calls on this stock were due and payable. This goes to show that the defendant never paid five hundred dollars and was not entitled to the stock. It is consistent with the contention of the plain-

tiff.   If the defendant really paid five hundred dollars as claimed, it seems that he treated the matter very lightly. He never offered to make the deferred payment and waited two years before he says he demanded the stock. All this while, according to his contention, the defendant left $500 in the hands of the bank, never offered to pay the balance due, and whether he could legally demand the delivery of five shares before paying the balance due it seems strange he neglected this whole matter for two years.   The testimony was taken before the Referee.   He heard the witnesses and saw them testify.   Under these circumstances his finding is entitled to the same weight as the verdict of a jury.   Camp v. First Nat. Bank of Ocala, 44 Fla. 497, 33 South. Rep. 241; State ex rel. Sanchez v. Call, 36 Fla. 305, 18 South. Rep. 771; Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792.

Where there is evidence to support the finding of a Referee it will not be disturbed or set aside by an appellate court as being against the evidence where its propriety depends entirely upon the credibility of witnesses. We have carefully read and considered the entire testimony in this case.   We have not mentioned all of it.   There are circumstances other than those we have mentioned that tend to show the finding of the Referee is correct. Indeed, without seeing the witnesses, we think the contention of the defendant is unreasonable and unfounded.   We do not see how the Referee could have arrived at any other conclusion.   On the rehearing counsel submit we overlooked the testimony of defendant McLeod, "that he was of the impression that the stock had been issued and was at the bank for him."   If he was under this "impression" why did he leave five hundred dollars with the bank for nearly two years, do nothing about the stock all that time, receive no interest on his money or ask any-

thing about dividends on his stock? We think we are warranted in this conclusion from the testimony. In order that we may not be misunderstood, we think the testimony of Mr. Barton and Mr. Mickler sufficient to support the finding of the Referee.

It is further contended: "That the court failed to consider and pass upon the second assignment of error, to-wit: that the Referee erred in striking from the record the defendant's plea of nonjoinder." We thought this assignment was abandoned by a failure to argue the same. The only reference to this assignment in the brief of plaintiff in error was the statement that the second and third assignments would be argued in connection with the first assignment which related to the court's requiring the defendant to *join in the demurrer* to his pleas without allowing him time to examine the sufficiency of the grounds of demurrer. This had nothing to do with the question involved in the second assignment, to-wit: "The Referee erred in striking from the record the defendant's plea of non-joinder filed May 12th, 1910," and nothing said in the brief on the first assignment could, in our opinion, be considered as an argument of the second assignment of error. Indeed, the defendant in error, following the method adopted by the plaintiff in error, grouped the first, second and third assignments under one assignment, but did not have a word to say about the second assignment. But be that as it may the plea was properly stricken by the court on motion.

Pleas in abatement, as they do not deny the merits of plaintiff's claim, but merely tend to delay the remedy, are not favored, and the greatest strictness is applied to them, and they will not be aided in construction by any intendments. With them correctness of form is matter of substance, and any defect of form is fatal. 1 Ency. Pl.

& Pr., 23. Where such a plea, therefore, does not conform to the rules established as to them, the plaintiff is not compelled to demur to it, but may treat it as a nullity and have it stricken on motion. Anonymous, 1 Hemps't (U. S.) 215; Stewart v. Bennett, 1 Fla. 437; Hammond v. A. Vetsburg Co., 56 Fla. 369, 48 South. Rep. 419; Strobhar v. State, 55 Fla. 167, 47 South. Rep. 4.

This plea of non-joinder is defective in failing to state that the defendants who have been omitted are within the jurisdiction of the court and in not stating, in an affidavit verifying the same, the place of residence of such persons. Rule 18 of Circuit Court in Common Law Actions, 14 Fla. 11; 15 Ency. Pl. & Pr. 576. The plea is defective, also, because it does not aver that the omitted defendants are still alive. 15 Ency. Pl. & Pr. 576; Hollingsworth v. Ascue, Cro. Eliz. 355; Belden v. Curtis, 48 Conn. 32; Raney v. McRae, 14 Ga. 589, 40 Am. Dec. 660; Levi v. Haverstick, 51 Ind. 236; Allen v. Lucket, 3 J. J. Marsh, (Ky.) 164; Burgess v. Abbott, 6 Hill (N. Y.) 135; McArthur v. Ladd, 5 Ohio 514.

The plea fails to show that, at the time of the making of the note in the declaration alleged, the defendant was in partnership with the persons stated, (13 Ency. of Forms 667,) the plea merely alleging that at the commencement of this suit and long prior thereto the defendant company was and still is a co-partnership consisting of the defendant McLeod and two other persons named, and the obligation sued on is an obligation of the Live Oak Furniture Company. All persons who were partners in a firm at the time when a contract is made by or in behalf of the firm should be joined as defendants in an action brought for its breach. 15 Ency. Pl. & Pr. 868; Patten v. Starrett, 20 Me. 145.

In behalf of the petition for a rehearing, it is contended

that this court erred in not granting to the plaintiff in error the right to orally argue the cause, and our attention has been called to the request therefor endorsed on the brief of plaintiff in error. The clerk of this court did not see the said endorsement, and so did not note the same on the docket. No member of the court saw the request for oral argument until attention thereto was called by the petition for rehearing. The request, a line of typewritten words, not signed by counsel, was endorsed on the outside page of the brief and did not appear where we would necessarily have seen it in the brief. The failure to allow oral argument herein was due solely to the fact that the request therefor was not seen before the decision in the case. The court and the clerk greatly regret the occurrence. We do not feel called upon, however, to grant the request now. It was not made in accordance with our rules. Rule 21 of the Supreme Court Rules provides: *"In addition* to the submission of a cause on briefs as provided by the rules of this court, either party may orally argue the case, if desired, in which event *a memorandum* for such oral argument shall be filed *with the clerk* at the time of filing briefs."* We think this rule contemplates the filing of a memorandum separate from the briefs. In this way it would hardly be overlooked by the clerk, and our attention would be called to the same, and the unfortunate occurrence here complained of would be prevented.

For the failure to properly note the cause for oral argument, and for the further reason that we have carefully and fully considered every question insisted upon by counsel, and feel sure no good could be accomplished by a rehearing and an oral argument thereof, the request therefor is denied.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.