HAROLD GODFREY *vs.* BOSTON ELEVATED RAILWAY COMPANY.
JAMES GODFREY *vs.* SAME.

Suffolk.    January 8, 1913. — September 11, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence,* In use of highway, Street railway. *Constitutional Law. Practice, Civil,* Report.

A boy six years and eight months of age, who is playing tag with two other boys ᾽ a city street with parallel street railway tracks, on which he knows that cars are passing frequently at all times of day, and, being absorbed wholly in his play, runs in front of an approaching street railway car which is so near that it strikes him with hardly an appreciable interval of time as soon as he reaches the track, is not in the exercise of any care at all, and consequently cannot recover for his injuries thus caused, assuming that the motorman was negligent.

St. 1912, c. 317, providing that "if the justice who presides at a trial has reserved a case for report to the Supreme Judicial Court, or to the full court, and fails, by reason of physical or mental disability, death or resignation, to make such report, any other justice of the same court may examine and report the same," is constitutional.

MORTON, J. These are two actions of tort. The first is to recover damages to the plaintiff, a minor six years and eight months old at the time of the accident, for injuries caused by being run over by a car operated by the defendant company. The second is by the father for loss of services, medical attendance and nursing. The accident happened on June 28, 1903, at about half past seven o'clock in the evening on Dorchester Avenue in Boston. The two actions were tried and have been argued together. At the close of the evidence the presiding judge directed a verdict for the

defendant, and the case is here on report under St. 1912, c. 317, by another judge after the death of the presiding judge.*

We shall speak of the plaintiff in the first action as the plaintiff.

The uncontradicted evidence showed that the plaintiff was playing tag with two boys, Joseph and John Murphy, children of a neighbor, in their back yard which adjoined his own; that the plaintiff was chasing the Murphy boys and that John ran out of the yard and into and across the avenue, over to the sidewalk on the other side of the avenue, the plaintiff running after him; that according to the plaintiff's testimony John, after dodging between two men or around an electric pole, turned and ran back again, the plaintiff still running after him, and that he (the plaintiff) heard some one shout "Get out of the way," and looked up and saw the motorman and then was struck by the car. The plaintiff testified that he did not see any car and heard no gong or anything to indicate that a car was coming. On cross-examination he testified amongst other things as follows: "Q. You were *running* about as fast as you could when you were going back, the same as you were when you were coming over? A. Yes, sir.—Q. And you were not paying any attention to anything but John when you were going back, were you? A. No, sir.—Q. And you didn't hear anything? A. No, sir.—Q. But you did not listen, did you? A. Yes, sir.—Q. Listen? A. Yes, sir.—Q. But you didn't hear anything? A. No, sir.—Q. And you didn't see anything? A. No." The plaintiff also testified that as he started to go back he heard Joseph, who remained on the other side of the avenue, shout "Hurry up." The testimony of Joseph, who was called as a witness by the plaintiff, differed slightly from that of the plaintiff. He testified that after the plaintiff and John got over on to the sidewalk on the opposite side of the avenue the plaintiff tagged John, and that John fell down and the plaintiff started and ran back as fast as he could towards the witness, looking directly at him, and was struck by the car coming down the avenue; and that as the plaintiff started back he (the witness) shouted to him "Hurry up across or else he would be it."

Dorchester Avenue is straight for a long distance from where the accident took place, with a slight downward grade in the direc-

---

* The presiding judge was *Bishop*, J. The report was made by *McLaughlin*, J.

tion in which the car was coming. The plaintiff was "a quick, bright, intelligent and active" child, and was well acquainted with the avenue, having gone along it for a year on his way to school, and knew that there were double tracks "with cars going frequently at all times of the day." It was not contended that he was not of sufficient age, intelligence and experience to be upon the street unattended. The contrary is insisted upon by the defendant and is asserted by the plaintiff. No question of due care on the part of the plaintiff's parents is therefore involved. See *Slattery* v. *Lawrence Ice Co.* 190 Mass. 79. He was lawfully upon the street, but it is apparent, as he himself said in substance, that he was not paying attention to anything except the game that he was playing. He did not look to see whether a car was coming, and though he says that he listened it is manifest that his attention was absorbed by his play. He ran into the street when the car was so near that it struck him with hardly an appreciable interval of time as soon as he reached the track, and he says that he did not see it or hear it. Nothing but utter inattention prevented him from doing so. A certain amount of heedlessness is to be expected in a child of his age and is consistent with due care on its part. But the trouble with the plaintiff's case is that the only reasonable construction that can be given to his and the other testimony is that he was not exercising any care whatever. The shout of Joseph to "Hurry up" was an incident of the play and did not excuse the failure of the plaintiff to exercise due care. The case is a hard one for the plaintiff. He lost both hands. But unless we are prepared to hold that in every case where a child of tender years is injured by the negligence of another he is entitled to recover, we must sustain the ruling. In the case of *Aiken* v. *Holyoke Street Railway*, 180 Mass. 8, which amongst those cited by the plaintiff most resembles this, there was evidence tending to show that the plaintiff had ceased his play and was using the highway as a traveller returning home. See *Messenger* v. *Dennie*, 137 Mass. 197; *Hayes* v. *Norcross*, 162 Mass. 546; *Morey* v. *Gloucester Street Railway*, 171 Mass. 164; *Gleason* v. *Smith*, 180 Mass. 6; *Young* v. *Small*, 188 Mass. 4; *Murphy* v. *Boston Elevated Railway*, 188 Mass. 8; *Stackpole* v. *Boston Elevated Railway*, 193 Mass. 562; *Holian* v. *Boston Elevated Railway*, 194 Mass. 74; *Russo* v. *Charles S. Brown Co.* 198 Mass. 473; *Kyle* v. *Boston*

*Elevated Railway, ante,* 260; *Walukewich* v. *Boston & Northern Street Railway, ante,* 262. We have assumed in the plaintiff's favor that there was evidence of negligence on the part of the motorman. It is plain also, if that question were material, that there was evidence of due care on the part of the plaintiff's mother, under whose charge he was.

The question of the constitutionality of St. 1912, c. 317 * pursuant to which the case was reported, has not been argued by the defendant though raised by it in the Superior Court. It plainly is constitutional. It relates to a matter of procedure or remedy, and does not affect vested rights. *Robbins* v. *Holman,* 11 Cush. 26. *George* v. *Reed,* 101 Mass. 378.

In accordance with the report the entry will be judgment on the verdict.

*So ordered.*

*S. L. Whipple & H. H. Bond,* for the plaintiffs.

*R. A. Stewart,* (*E. S. Kochersperger,* with him,) for the defendant.

---

* That statute provides as follows: "If the justice who presides at a trial has reserved a case for report to the Supreme Judicial Court, or to the full court, and fails, by reason of physical or mental disability, death or resignation, to make such report, any other justice of the same court may examine and report the same."