JAMES CROSBY, Adm'r, *vs.* MAINE CENTRAL RAILROAD COMPANY.

## Oxford. Opinion April 3, 1915.

*Accident. Automatic Crossing Signals. Children. Contributory Negligence. Due Care. Excessive Speed. Flagman. Gates. Negligence. Public Laws, 1905, Chap. 94. Railroad Crossing. R. S., Chap. 89, Secs. 9 and 10. R. S., Chap. 52, Sec. 86.*

In an action on the case, brought under R. S., Chap. 89, Secs. 9 and 10, to recover damages by reason of the death of the intestate, Howard Crosby, caused at a highway grade crossing in the town of Rumford, it is

*Held:*

1. That the intestate, a bright and intelligent boy about twelve years of age was sui juris.

2. That, therefore, the intestate was bound to exercise that degree or extent of care which ordinarily prudent boys of his age and experience are accustomed to use under similar circumstances. The standard is the conduct of boys who are ordinarily careful.

3. That the boy's conduct in this case fell far below the required standard; that not only did he fail to exercise the care of the ordinarly prudent boy of his age and experience, but he failed to exercise any degree of caution whatever. He was clearly guilty of contributory negligence and the jury were not warranted in finding the contrary.

On motion for new trial by the defendant. Motion sustained. Verdict set aside.

This is an action on the case brought under Secs. 9 and 10 of Chap. 89 of the R. S., by James Crosby, the father and administrator of the estate of Howard Crosby, deceased, for the benefit of the parents of the deceased. Plea, the general issue with brief statement alleging contributory negligence by deceased. The jury returned a verdict for plaintiff of $1200 and the defendant filed a motion for a new trial.

The case is stated in the opinion.

*George A. Hutchins, and Matthew McCarthy,* for plaintiff.

*Bisbee & Parker, and White & Carter,* for defendant.

SITTING: SPEAR, CORNISH, KING, BIRD, HANSON, JJ.

CORNISH, J.   This is an action on the case brought under R. S., Chap. 89, Secs. 9 and 10, by James Crosby, Administrator, to recover damages by reason of the death of his intestate, Howard Crosby.

The accident, by which the intestate, whom we shall hereafter designate as the plaintiff for the sake of convenience, lost his life, occurred on the afternoon of Saturday, March 9, 1912, at the Lincoln Avenue grade crossing in the town of Rumford.   The plaintiff, a boy lacking only two months of being twelve years of age, had left his home in Mexico, a town across the Androscoggin River from Rumford, at eleven-thirty o'clock in the forenoon to carry dinner, as he was accustomed to do when not in school, to his father who was employed in one of the Rumford mills.   He obtained the consent of his mother to attend the moving pictures in the afternoon, which he did, in company with Fred Clark, a companion nine or ten years of age. After the moving picture show was over, and at about four-thirty o'clock, the two boys started for home and on the way accosted one Memont, the driver of a bakery team with whom they were both acquainted, for a ride.   Memont assented and the boys got into the team, Memont sitting on the right and driving, Clark on the left and the plaintiff in the middle.   The team consisted of a single horse and a low covered baker's pung.   On their way to Mexico they had to pass over Lincoln Avenue, a public highway and the usual travelled road between the two towns across which the tracks of the Maine Central Railroad Company run practically at right angles and at grade.   No automatic crossing signals, gates nor flagman are maintained at this crossing, but there is the usual standard crossing sign. On reaching this crossing the team was stuck by a special train consisting of an engine and single car, on its way north from Rumford. The pung was demolished, Memont and the plaintiff were killed, but Clark fortunately escaped without injury.   These facts are not in dispute.

The plaintiff contends that the defendant was negligent (1) in running its train at an excessive rate of speed, and greater than allowed by statute at a crossing near the compact part of the town, R. S., Chap. 52, Sec. 86, and (2) in failing to give the necessary signals and warning by sounding the whistle and ringing the bell, as required by Public Laws 1905, Chap. 94.   A large number of witnesses testi-

fied as to the issues of fact raised by these allegations, but it is unnecessary to consider the force and effect of their testimony or to pass upon the question of the defendant's negligence, further than to say that a careful study of the evidence on these points leads to the conclusion that the train was moving at the rate of between eighteen and twenty-five miles per hour, and that the customary signals were given. The positive evidence introduced by the defendant on the question of signals is hardly overcome by the evidence of the plaintiff, largely negative in character. The plaintiff however is precluded from recovering because of his own want of due care, and that is the only question that needs discussion here. Failing in that, his case fails. What took place immediately prior to the accident is not left to conjecture, but is intelligently and graphically described by the Clark boy, the survivor of the sad accident, and that testimony alone ends the plaintiff's case. His own version is as follows:

"Q. Did you turn down Lincoln Avenue in front of Stanley Bisbees?

A. Yes, sir.

Q. That was down hill?

A. Yes, sir.

Q. How was he driving the horse then?

A. Trotting him.

Q. That was the top of the hill?

A. Yes, sir.

Q. Did he whip him or anything on the way down?

A. He did when he was about half way.

Q. When he was about half way down he whipped him?

A. Yes, sir.

Q. Did the horse kick or trot or run when he whipped him?

A. Trotted all the way.

Q. Along about then what were you and Howard doing?

A. Laughing at him.

Q. Laughing at who?

A. Mr. Memont.

Q. What for?

A. For hitting him and pulling him back.

Q. What was he doing that for?

A. To make him go.

Q. To make him go faster?

A.  Yes, sir.

Q.  Did you and Howard think anything about any train?

A.  No, sir.

Q.  You knew there was a railroad track there?

A.  Yes, sir.

Q.  You didn't pay any attention to it?

A.  No, sir.

Q.  You and Howard were fooling and playing?

A.  Yes, sir.

Q.  Did Mr. Memont stop the horse at all?

A.  He tried to down to the track.

Q.  That was when the horse was right on the track?

A.  Yes, sir.

Q.  And just when you got hit and didn't know any more?

A.  Yes, sir.

Q.  And right up to that time, you and Howard had been fooling and playing between yourselves all the time?

A.  Yes, sir.

Q.  And had not thought anything about the train?

A.  No, sir."

Such conduct on the part of the driver, Memont, a man of mature years, was inexcusably and grossly careless, and it could not with reason be contended that any recovery could be had on his part. *Warren* v. *B. & A. Ry. Co.*, 95 Maine, 115; *Day* v. *Boston & Maine R. R.*, 96 Maine, 207; *Blumenthal* v. *Maine Central R. R. Co.*, 97 Maine, 255; and many other cases to the same effect.

But the plaintiff is likewise prevented from maintaining his action, not on the ground of imputed negligence, a doctrine which does not obtain in this State,—*State* v. *B. & M. R. R.*, 80 Maine, 430,—but because of his own want of due care. He was a boy about twelve years of age and was sui juris. *Grant* v. *Ry. Co.*, 109 Maine, 133. He was in possession of all his faculties, a regular attendant at school and was bright and intelligent. He was familiar with the crossing and its approaches as he had occasion frequently to pass over it, and knew it was a place of danger, and yet as one of the party of three he approached and reached the crossing without taking the slightest precaution, either by looking or listening, to ascertain whether or not a train was drawing near. He was at the moment thoughtless and reckless. Children, sui juris, are not relieved from exercising pru-

dence and care merely because they are children. The well estab-
lished rule is that they are bound to exercise that degree or extent of
care which ordinarily prudent children of their age and experience
are accustomed to use under similar circumstances. The standard
is the conduct of boys who are ordinarily careful. Measured by this
standard the plaintiff falls far below the requirement. Not only did
he not exercise the ordinary care of boys of his age under like con-
ditions, but he failed to exercise any degree of caution whatever. A
certain amount of heedlessness is to be expected in a boy of his age,
and may be consistent with due care on his part; but nothing but utter
inattention existed here. He was "fooling and playing" with his
companion up to the very instant of the collision. Entirely oblivious
to all danger, thoughtlessly, rashly and recklessly he went to his
death. Such conduct must be condemned as grossly negligent even
in a boy twelve years of age, and brings this case within the decisions
in *Hayes* v. *Norcross*, 162 Mass., 546 (the case of a child of about six
years of age), *Gleason* v. *Smith*, 180 Mass., 6, (a boy of twelve),
*Godfrey* v. *Boston Elevated Ry.*, 215 Mass., 432, (a boy of seven);
*Brown* v. *European & N. A. Ry. Co.*, 58 Maine, 384, (a boy of nine);
*Calomb* v. *Portland and Brunswick St. Ry.*, 100 Maine, 418, (a girl of
nearly eleven). The very recent case of *McCarthy* v. *B. & A. R. R.
Co.*, 112 Maine, 1, where two boys of about fourteen riding in a milk
cart were struck at a grade crossing is strikingly in point in many of
its features and the principles of law there laid down, apply with
equal force here.

The case of *Wood* v. *Maine Central R. R. Co.*, 101 Maine, 469,
relied on by the plaintiff is readily distinguished, because in that case
the plaintiff was a passenger for hire riding in the rear seat of a
public stage, and such a passenger has a right to rely in some measure
upon the watchfulness of the driver and is not, as a matter of law,
required to be so alert in looking and listening for an approaching
train as he. But in the case at bar the plaintiff evidently placed no
reliance upon the driver or his watchfulness, and he had no occasion
to do so. All three, sitting on the same seat, were apparently play-
fellows together, much as they would have been had they been walk-
ing on the street instead of driving, and in their sport had gone
blindly upon the crossing, as in *Godfrey* v. *Ry. Co.*, 115 Mass., supra.
The fact that the older man was driving rendered the plaintiff no less
careless in this case. Nor does the fact that in approaching the

crossing the vision was obstructed by the higher banks, the trees and a woodyard, change the situation. The more dangerous the crossing, the greater the care demanded of the traveller. At a point fifty feet from the crossing there was a clear view of the track for a long distance. Had the plaintiff looked then he could have seen the approaching train, but it is admitted that he did not. The difficulty of seeing and hearing the train is therefore immaterial as it is the absence of even the smallest effort on the plaintiff's part, not his inability to see or hear with reasonable effort, which convicts him of contributory negligence. *Day* v. *R. R.*, supra.

The accident was deplorable, but unless we are prepared to hold that in every instance where a child of tender years is injured by the negligence of another he is entitled to recover, we cannot sustain this verdict.

*Motion sustained.*
*Verdict set aside.*