ETHEL R. LIBBY

*vs.*

MAINE CENTRAL RAILROAD COMPANY and Trustee.

LEWIS F. LIBBY

*vs.*

MAINE CENTRAL RAILROAD COMPANY and Trustee.

Kennebec.    Opinion June 14, 1917.

*Interpretation of R. S., 1916, Chap. 57, Sec. 63.    General rule as to admitting evidence showing that engines or locomotives have set other fires in same locality.*
*Rule as to negligence of railroad company having any bearing*
*on the question of liability for fire set along its tracks.*

Two actions on the case based on Sec. 13, Chap. 52, R. S., for burning buildings and personal property therein contained on the night of May 28th 1915, by one of defendant's locomotives were tried together. They are before the court on motions to set aside verdicts recovered by the plaintiffs and on an exception to the admission of evidence.

The buildings were on a farm in Clinton, on the westerly side of the highway leading from Clinton to Burnham, easterly of and adjacent to the defendant's track. Shortly before the fire was discovered a heavily loaded freight was climbing the grade opposite the buildings, and the engine was having great difficulty in pulling its load, and was throwing off fire and live coals. The wind was unusually strong, and blew quartering in the direction of the buildings. The fire was partly on the roof and partly on the side of a small building nearest the track when discovered. This building which had formerly been an ice-house and was banked with old sawdust, on the end towards the track, had near it a quantity of dry grass grown up through some old wire, an old comforter and some old burlap laying on the ground. Before retiring Mr. Libby had closed up the building, and he was not smoking, and saw no fire. The buildings at the nearest point to the track were six hundred and fifty feet distant therefrom.

We cannot say that from the evidence presented the verdicts of the jury should be set aside. No other probable cause of the fire is suggested. The distance from the track raises the strongest doubt, but with the wind blowing as the evidence shows, that distance would be quickly travelled, and there is evidence in the case of live sparks travelling a greater distance than this.

.The evidence as to dampness of the ground on the night in question is conflicting, but there is evidence that grass fires started from the burning buildings, which has tendency to prove that the fire may have started in the inflammable material surrounding the ice-house. An inspection of the wire mesh used in the spark arrester in the engine fails to satisfy us that dangerous sparks might not be forced through when the engine was laboring hard and the wind blowing almost a gale as described.

Subject to the defendant's exception evidence was admitted that other engines of the defendant had set fires in this vicinity about the time of the fire in question. The defendant contends that such evidence was inadmissible unless it was previously shown that the engines setting such fires were of the same type, equipment and construction as the engine supposed to have set the fire in question. This exception is not sustained. The evidence was relevant and admissible for the purpose of showing the capacity of locomotive engines to set fires by the emission of sparks or the escape of coals.

Action on the case to recover damages on account of fire caused by the defendant company, said actions being brought under R. S., 1903, Chap. 52, Sec. 73, (R. S., 1916, Chap. 57, Sec. 63). The two plaintiffs were husband and wife and the actions were tried together. In each case defendant filed plea of general issue. In case of Ethel R. Libby, verdict was rendered in sum of $3008, and in case of Lewis F. Libby, verdict in sum of $1143. In each case defendant filed motion for new trial, and also exceptions to admissibility of certain testimony. Motions to set aside verdicts overruled. Exceptions overruled.

Case stated in opinion.

*Frank G. Farrington, and Andrews & Nelson,* for plaintiffs.
*Johnson & Perkins,* for defendant.

SITTING:  SAVAGE, C. J., CORNISH, KING, HANSON, PHILBROOK, MADIGAN, JJ.

MADIGAN, J.  These two actions on the case, based on Sec. 73, Chap. 52, of the R. S., for burning buildings and personal property of Mrs. Libby, and personal property of her husband were tried together and the jury returned verdicts for the plaintiffs. On a general motion and exception to the admission of evidence they are before the Law Court.

The plaintiffs lived on a farm in the town of Clinton, on the westerly side of the highway leading from Clinton to Burnham, and easterly

of and adjacent to the tracks of defendant's railroad. The buildings consisted of a dwelling house, ell, shed, barn, and hog house. The house faced the highway on the east and was farthest removed from the track. The ell was west of the house and nearer the track. Extending southerly from the ell to the barn was the shed. Nearest to the track was the hog house, formerly an ice-house, which was on the westerly end of the barn. Across the end next to the track it was banked with sawdust, and back of it laid some old wire, through which the grass had grown up, withered, and died. Beyond this wire and dry grass, toward the track, perhaps a rod or two west of the hog house, an old comforter, surrounded by a lot of burlap, laid on the grass.

On the night of the fire, May 28, 1915, Mr. Libby closed the barn and other buildings between 7.30 and 8.00 o'clock. Back of the buildings there was a grade in the defendant's track, of forty-five feet to the mile. Four freight trains passed over the grade during the evening, one at about 9.55, one west bound at about 10.34, one east bound at about 10.55, and one east bound at about 1.20. The driver of the 10.55 train noticed no fire, but the driver of the next train, when about one mile from the buildings saw flames half on the side and half on the roof of the hog house. His warning was the first notice of the fire the family or the neighbors had.

It was fully established that freights have great difficulty in getting over this grade without extra engines, and that it is a frequent occurrence for them to throw off live sparks at this point. Mrs. Hunt, whose husband at the time was foreman of that section, testifies that about eleven o'clock she saw a freight train almost stuck on this grade, "just moving," it was making a noise and having a hard time, working very hard, and sparks came from the smoke-stack, quite a few good sized sparks. The wind was blowing a gale from the hardest part of the grade, exactly quartering, toward the Libby buildings. It was a common occurrence for freight trains to get stuck out there and sometimes they had to back up to Burnham. There is no question from either side as to the direction of the wind, or that it was blowing hard, and the crew do not deny that the engine was throwing off live sparks.

Circumstances indicate that this engine set the fire. No other explanation seems plausible. The defendant insists that a fire set at eleven would have made greater headway than this did. The

progress of fire depends on conditions. Lodging in the dry grass, catching in the old comforter, and smouldering in the sawdust banking, it might burn some time before getting vent. Sawdust, owing to its compactness, burns slowly but persistently. Some witnesses claim conditions were too damp, but two women walked through the grass with low shoes on, without wetting their feet, and grass fires started from the burning buildings. The distance, six hundred and fifty feet from the track to the buildings, is claimed to be too great for a live spark to travel. But a disinterested witness testifies that the day before the fire a live spark from an engine lit on him at a measured distance of fifty-five rods from the track. The experience of the jury enabled them to weigh all of this testimony.

The engines that passed the buildings previous to the fire were equipped with the Mudge Slater Spark Arrester, which the defendants contend makes it impossible for the engines to throw off dangerous sparks. Evidence of a test was given to prove this theory, but during that test there was little, if any wind. Were all of the other conditions the same as on the night of the fire? A coal burning engine must have draft to steam and the harder it works the more draft it must have, for lessening the draft lessens the power. The driver and fireman of this engine do not deny it was throwing off sparks on the grade. Why could it not throw off any spark that a powerful locomotive could during a high wind force through the screen in the spark arrester? The mesh in this screen is three-sixteenths of an inch long by three-fourths of an inch wide, seemingly large enough to emit dangerous sparks.

Several witnesses testified to other fires set about this time in this vicinity by engines of the defendant. Mr. Libby saw no fire when making his rounds in the evening, and he was not smoking and had no matches. The fire apparently caught from the outside and from the appearance when discovered started near the ground. It was not noticeable from the track at eleven, but was on the passing of the next train. In view of the testimony of Mrs. Hunt, and the other witnesses, who testify as to the conditions existing, and the location of the fire when discovered, and the further fact that the burlap and old comforter were destroyed, we do not feel that the jury were so far wrong in their conclusion that their verdict should be set aside.

Subject to the defendant's objection the court admitted evidence that several other fires had been set by the defendant's engines in this same locality and about this same time. The contention being that all of the engines that passed this locality on the night of the fire having been identified, before the evidence objected to would be admissible, the plaintiffs must first prove that the engines, which set the other fires must be shown to have the same equipment and the same fuel as the one which burned the buildings. We cannot agree with this view. These actions are not based on negligence, but are based on the statute making the defendant liable regardless of negligence, and it is not contended that any of the engines were propelled by electricity, or were oil burning, or that they did not burn soft coal. This evidence tended to show the dry and inflammable condition of the country at the time and that sparks from coal burning engines can set fires.

While the modified rule is not passed upon in the following cases, nevertheless the reasoning on the general principles of the admissibility of evidence of the character objected to seems applicable where the modified rule is invoked, but as heretofore observed this rule has never been adopted in this State. *Jones* v. *Maine Central Railroad,* 106 Maine, 442, says the following:—"Where in an action to recover damages caused by a fire alleged to have been set by the defendant's locomotive, held that the question involved was of reasonable inference from all the facts and circumstances, and that the evidence should be of such character that a reasoning mind could see the connection between cause and effect. Where the defendant having introduced expert evidence that its locomotives, equipped as they were with a wire netting over the smoke-stack, could not in the opinion, of the witnesses throw a spark beyond thirty feet from the rail, held that it was not error to permit the plaintiff in rebuttal to introduce testimony of specific instances where fires had been set by these locomotives at distances varying from 95 to 152 feet. The objection raised by the defendant that the evidence was too remote in time and place, and that the conditions were not shown to be similar to those surrounding the fire for which this action is brought, go to weight of the testimony and not to its admissibility."

*Dunning* v. *Maine Central Railroad,* 91 Maine, page 87. "In the trial of an action for damages by fire, alleged to have been communicated by a locomotive engine, when the question at issue is

whether as a matter of fact the fire was caused by any locomotive, evidence that other fires were caused by the defendant's locomotives, at about the same time and in the same vicinity, is relevant and admissible, for the purpose of showing the capacity of locomotive engines to set fires by the emission of sparks or the escape of coals. That other engines of the same company, under the same general management, passing over the same track at the same grade, at about the same time, and surrounded by the same physical conditions, have scattered sparks or dropped coals, so as to cause fires, appeals legitimately to the mind as showing that it was possible for the engine in question to do likewise. Such testimony is illustrative of the character of the locomotive, as such, with respect to the emission of sparks or the dropping of coals."

To the same effect is *Grand Trunk Railway* v. *Richardson*, 91 U. S., 454-470.

In *Texas and Pacific Railway* v. *Watson*, 190 U. S., 287. The fire was alleged to have been caused by the negligence of the Railway Company, in the use of a defectively constructed locomotive and in the careless operation thereof. Evidence was admitted that at or about the same time of a fire, and at the time of the passing of the locomotive, which it was charged occasioned the fire, the witnesses observed other fires at various points not far removed from the fire complained of. *Held*, that the evidence was competent as having a tendency to establish that the destruction of the plaintiff's property was caused by the locomotive in question, and as tending to show negligence in its construction or operation.

*Smith* v. *Central Vermont Railway Company*, 80 Ver., 216. "Although there is not a unanimity of decisions on the question, we think it may be said from the weight of authority that this kind of evidence is admissible as tending to show such a tendency, or capacity in the class of engines passing over the line to emit sparks as to be evidence tending to prove the possibility and a consequent probability that the fire in question was caused by one of the defendant's engines. And we see no good reason for any difference in the tendency of such evidence, whether it relates to other engines within a reasonable length of time, before or within a reasonable time after, the occurrence of which complaint is made." In this case the modified rule was urged before the court, but it was held that in any event it did not apply as the plaintiff could not definitely identify the engine that set the fire.

To the same general effect as Maine, Vermont and United States decisions are the Massachusetts decisions. *McGuire* v. *Platt*, 177 Mass., 125.

As the defendant does not claim that any of their engines are better equipped for arresting sparks than those that passed the plaintiff's buildings on the night of the fire, and as this one evidently could, and according to the evidence, did emit sparks, we can see no reason why the evidence should have been excluded, regardless of the modified rule contended for.

As no complaint is made about the amount of the damages we must hold that the defendant's motion and exception must be overruled and the verdicts stand.