HAROLD SEARLES *vs.* HOWARD ROSS AND FRED ROSS.

WARREN SEARLES, PRO AMI *vs.* HOWARD ROSS AND FRED ROSS.

Franklin.    Opinion, October 15, 1935.

*Benjamin L. Berman, David V. Berman, Frank Deering*, for plaintiffs.

*Currier C. Holman, Cyrus N. Blanchard*, for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J.    There are involved here two suits, one by Warren Searles, a minor, who seeks to recover damages for personal injuries occasioned, as he says, by the negligence of the defendants, the other by his father who claims reimbursement for medical expenses and damages for the loss of services of his son. After a ver-

dict for the plaintiff in each case the defendants filed general motions for new trials which are now before this Court.

At the time of the accident Warren Searles was nine years old. The members of his family, who were living in the Town of Temple, fell into financial distress, and the selectmen of the Town of Phillips, which was responsible for their care, removed them to Phillips and placed them on the Dill Farm, so called, which was owned by the defendants, who were father and son. The town paid the defendants for such use of the farm a rental of six dollars a month. The exact terms of the arrangement are not altogether clear, but it is apparent that the Searles family was to occupy the premises, was to have the right to plant a garden and to pick fruit and berries which might grow on the place. The defendants reserved the right to cut the hay. On the day of the accident the defendants were mowing one of the fields in the farm. There were two machines engaged in the work, one operated by Archie Rowe, an adult, the other by Victor Weed, a boy of thirteen. The plaintiff, Warren Searles, with his sister, Phyllis, of the age of eleven were picking blueberries on the border of this field or in the field immediately adjacent thereto. According to the testimony of the injured boy, Victor Weed called to him and asked him to come down and touch up the horses which Victor was driving. The plaintiff says that he first touched up the near horse with a stick, and then ran around in front and touched up the off horse. As he did so, they plunged forward, and before he could get out of the way his right foot was struck by the cutter bar which extended out about five feet from the right side of the machine. His foot was almost severed from his leg, and amputation was necessary. According to the testimony of Victor Weed, he did not ask Warren to strike the horses, and the first that he knew of the boy's presence in front of the machine was when he suddenly came from the rear and struck the off horse. There is here a clear conflict in the evidence. In some particulars the boy is corroborated by his sister, and Victor Weed by Archie Rowe.

There are a number of grounds why, according to the defendants, the motion should be sustained. They say that Fred Ross, the father, had nothing whatever to do with running the farm and

hence could not be liable, that the plaintiff was a trespasser, that there was no negligence of the defendants either in permitting Victor Weed, a boy, to run the mowing machine, nor any negligence on the part of Weed for which they, as principals, are answerable, and that Warren Searles, the plaintiff, was clearly guilty of contributory negligence.

In considering these motions we must view the evidence in the light most favorable to the plaintiffs. On the defendants is the burden of proving that the jury's verdicts are manifestly wrong. *King* v. *Wolf Grocery Company*, 126 Me., 202; *Hatch* v. *Portland Terminal Company*, 125 Me., 96; *Daughraty* v. *Tebbets*, 122 Me., 397.

There was ample warrant for the jury's finding that in the operations on this farm the defendants were partners. Their testimony that there was an undisclosed arrangement between them, by which the son was to have the sole charge and to pay his father a rental, is refuted by facts which are not in dispute. Victor Weed was apparently boarded and paid by the father, Fred Ross; the property was owned by both defendants and assessed against them under the name of F. M. Ross & Son; under this designation they had carried on a milk business for fifteen years; and the hay cut was used to feed stock owned by both defendants. To this testimony the language of this court in *Roux* v. *Lawand*, 131 Me., 215, 219, is peculiarly applicable. "Viewing the testimony, as the plaintiff was entitled to have it viewed, in the light most favorable to him, and giving him the benefit of every inference to be drawn therefrom, evidence tended to sustain that, as between the defendant and the deceased person, at the time of the unfortunate disaster, there was that community of interest and of property, which, in general, constitutes partnership."

The jury has found under instructions of the court, which we must assume to have been correct, that this child was not a trespasser. The evidence justifies such conclusion. His father was a tenant of the farm of which this field was a part. Even without that relationship the children were given permission, according to their mother's testimony, to pick berries on the property, and they were at all times treated by the defendants and their em-

ployees as lawfully present. On these premises the plaintiff, Warren Searles, certainly had the status of an invitee, and as such the defendants owed him the "affirmative duty of using reasonable care, not only to see that the premises to which he was invited were in a reasonably safe condition, but also to take precautions to guard him from dangers arising out of instrumentalities under their control." *Brown* v. *Rhoades*, 126 Me., 186, 188.

The negligence of Victor Weed, who was clearly the employee and agent of the defendants, is in dispute. If what the injured boy says is true, that he was asked to touch up the horses with a stick and did so in the manner claimed by him, and that at that time Weed was in control of the horses which lunged forward and dragged the cutter bar of the mowing machine against the plaintiff's foot, there is sufficient evidence to justify the jury's finding on this point. The little boy is corroborated by his sister, who states that she heard Victor Weed call to him to whip up the horses and saw him strike the near horse first. If the story told on the witness stand by Victor Weed is true, that the plaintiff jumped from behind the machine without warning and struck the off horse, certainly no blame could attach to the boy driving the machine. The force of Victor Weed's testimony is greatly weakened by his mother's statement that he told her an entirely different story of the accident shortly after it happened, and by his having signed a statement that he did request Warren Searles to come over "to browse up the horses." Victor Weed is corroborated by Archie Rowe, who at the time, was running the other mowing machine in the same field. The weight to be given this testimony, especially in view of the opportunity that Rowe had to observe while he was himself at work, was for the jury. There can be no doubt that according to well-established rules the conclusion to be drawn from all the evidence on the question of the defendants' negligence was for the jury.

In determining the issue as to the contributory negligence of the boy, we must view the evidence in the light most favorable to him. The question really is whether on his version of the occurrence we must hold him guilty of contributory negligence as a matter of law.

Children, even those of the tender years of this boy, are not absolved from the obligation to use some care. But the law has regard for the frailties of childhood and the thoughtlessness of youth. A child is required to exercise only that degree of care and judgment which children of the same age and intelligence ordinarily exercise under the same circumstances. *Garland* v. *Hewes,* 101 Me., 549; *Brown* v. *Rhoades,* supra. A study of the authorities clearly indicates that except in obvious cases the determination of this issue is for the jury. Examples of heedlessness, which will bar a recovery, are indicated in the following cases. *Brown* v. *European & North American Railway Company,* 58 Me., 384; *Colomb* v. *Portland & Brunswick Street Railway,* 100 Me., 418; *Morey* v. *Gloucester Street Railway Company,* 171 Mass., 164; *Young* v. *Small,* 188 Mass., 4; *Godfrey* v. *Boston Elevated Railway Company,* 215 Mass., 432. Each of these cases, except the first, concern the rights of a child who thoughtlessly and without looking darted into a public street and was struck by a vehicle therein; and in each it is recognized that a child, even of very tender years, is bound to exercise some care to avoid a danger so obvious. In the first case and certainly in some of the others the accident was caused not by the contributory negligence of the child but by its sole negligence.

The issue now before us is readily determined by a consideration of those cases where it is held that the question of the contributory negligence of a child was for the jury.

*Plumley* v. *Birge,* 124 Mass., 57, was an action brought by a boy thirteen years old to recover for the bite of a dog. The boy struck the dog with a stick and the question was as to the plaintiff's negligence. The court in holding that this question was properly submitted to the jury said, pages 58-59: "It was necessary that the plaintiff, though a boy, should prove that he was in the exercise of due care. But due care on his part·did not require the judgment and thoughtfulness which would be expected of an adult under the same circumstances. It is that degree of care which could reasonably be expected from a boy of his age and capacity. *Munn* v. *Reed,* 4 Allen, 431. *Carter* v. *Towne,* 98 Mass., 567; *Lynch* v. *Smith,* 104 Mass., 52. *Dowd* v. *Chicopee,* 116 Mass., 93. If the court had ruled that, if the plaintiff was old enough to know that striking the dog would be likely to incite him to bite, he could not

recover, it would have been erroneous. This is not the true test. It entirely disregards the thoughtlessness and heedlessness natural to boyhood. The plaintiff may have been old enough to know, if he stopped to reflect, that striking a dog would be likely to provoke him to bite, and yet, in striking him, he may have been acting as a boy of his age would ordinarily act under the same circumstances."

*Garland* v. *Hewes*, supra, is a similar case and the following language of our own court at pages 551-552 is significant: "The mere fact that he was old enough to know that striking the dog over the head and pulling his ears might cause the dog to bite him, would not bar his recovery if he was in the exercise of such care as would be due care in a boy of his age and intelligence. *Plumley* v. *Birge*, 124 Mass., 57. This question was for the jury to determine and it was submitted to them under instructions to which no exception was taken."

The case of *Milliken* v. *Fenderson*, 110 Me., 306, is to the same effect, as the above cases, and in the opinion *Plumley* v. *Birge*, supra, is cited with approval.

The case of *Krumposky* v. *Mt. Jessup Coal Co., Ltd.*, 266 Pa., 568, lays down the broad rule that a child nine years old will not be held guilty of contributory negligence as a matter of law. Though in this jurisdiction we have not in every instance adhered to this doctrine, we nevertheless realize that the application of the well-settled rule governing the responsibility of young children will result in holding in all but exceptional circumstances that the negligence of a child of such tender years is a question of fact to be settled by the jury.

The facts in the case of *Camp* v. *Hall*, 39 Fla., 535, are in point. The plaintiff, a boy of fourteen, employed by the defendant was directed to assist in moving some freight cars loaded with lumber. This was outside of his regular work. He went between two of the cars to help push, fell, and was run over by the car behind him. The defendant contended that he was guilty of contributory negligence in taking the position which he did. The court said, page 573: "He was a mere boy and presumptively wanting in discretion." The question of his due care was held to be for the jury.

*Foley* v. *California Horseshoe Company*, 115 Cal., 184, was an

action brought by a boy of fourteen who was employed in operating a machine to punch holes in horseshoes. He was directed to make some minor repairs to the machine, a labor outside of his regular work. He knew that it might start, while he was so engaged, but he neglected to take precautions to keep clear of it, and was injured by its starting. The court in holding that his contributory negligence was a question for the jury said, page 192, with reference to the responsibility of children: "Their conduct is to be judged in accordance with the limited knowledge, experience, and judgment which they possess when called upon to act. And it must, from the nature of the case, be a question of fact for the jury rather than of law for the court, to say whether or not, in the performance of a given task, the child duly exercised such judgment as he possessed, taking into consideration his years, his experience, and his ability."

Though we should probably take a different view of the defendant's negligence than did the court in *Price* v. *The Atchison Water Company*, 58 Kan., 551, the language of that court with respect to the contributory negligence of a child is in point. At page 557 it is said: "The contributory negligence of the deceased, can be shortly disposed of. What might be negligence in an adult will not of necessity be negligence in a child. Persons of tender years are not held to the same degree of care that a mature and experienced person is required to exercise. As remarked in *Kan. Cent. Rly. Co.* v. *Fitzsimmons*, supra:

'Boys can seldom be said to be negligent when they merely follow the irresistible impulses of their own natures—instincts common to all boys. In many cases where men, or boys approaching manhood, would be held to be negligent, younger boys, and boys with less intelligence, would not be. And the question of negligence is, in nearly all cases one of fact for the jury, whether the person charged with negligence is of full age or not.'

"This view of the law we believe to be taken by all the courts."

To the same effect as the above cases are the following, *Omaha & Republican Valley Railway Company* v. *Morgan*, 40 Neb., 604;

*Carmer* v. *Chicago, St. Paul, Minneapolis & Omaha Railway Company*, 95 Wis., 513.

In the case which we are considering, if, as we must, we view the evidence in the light most favorable to the plaintiff, we have an additional circumstance of the utmost importance. Warren Searles was doing that which he was told to do by a much older boy, whom the defendant thought qualified to operate a mowing machine. Can we say as a matter of law that he was not justified in placing some reliance on the judgment of that older boy? Was he not warranted in placing confidence in Victor Weed's implied assurance that he could control the horses? Victor Weed knew them, the plaintiff did not. The language of the court in *Camp* v. *Hall*, supra, page 573-574, in discussing a somewhat similar relationship is in point here. "When a person authorized by the master to control and direct another youthful and inexperienced servant, directs the latter to perform a dangerous service not in the line of his employment, without warning or instructing him as to the danger of the particular service, the obedience of the latter servant will not be contributory negligence on his part, and he will be entitled to recover for any injury which may occur by reason of the failure to warn or instruct."

If what the plaintiff did was heedless, was it not a question for the jury to determine whether in the view taken by the court in *Milliken* v. *Fenderson*, supra, it was only such heedlessness as is natural to boyhood?

The members of a jury are peculiarly qualified to weigh such evidence as was offered in these cases. We are satisfied that the question of the plaintiff's due care was properly submitted to them.

*Motions overruled.*