FRED E. GOODWIN *vs.* BOSTON & MAINE RAILROAD.

York.     Opinion, July 31, 1936.

*Hollis B. Cole,*
*George D. Varney,* for plaintiff.
*Arthur E. Sewall,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

BARNES, J.   This is an action on the case, to recover damages for buildings and contents destroyed by fire in Eliot, on the night of October 27, 1934, property of the plaintiff, who alleges that the fire was communicated to his ice house or shed by a locomotive of the defendant.

Verdict was for plaintiff, and in support of its motion for a new trial defendant argues only on liability.

The railroad right of way ran almost directly south over plaintiff's land, a hundred-acre farm.

His house stood about seventy-two feet west of the nearest rail, ice house and tool shed about one hundred nineteen feet therefrom. The barn, milk house and carriage house were west of the house, sixty and thirty feet distant.

Catching on ice house or contiguous shed, the fire consumed all the buildings except two small hen houses. The roof of the ice house was covered with old cedar shingles; that of the shed with paper roofing, old and torn.

The trial jury viewed the locus.

As this Court has most recently said in *Searles* v. *Ross*, 134 Me., 77, 181 A., 820, "In considering these motions, we must view the evidence in the light most favorable to the plaintiffs. On the defendants is the burden of proving that the jury's verdicts are manifestly wrong."

Some of the buildings were electrically lighted, but the ice house and tool shed were not wired for electricity, and the fire was first seen on roof or side of one or both of these buildings. It was urged by defendant that the fire was communicated from the house chimney.

A daughter of plaintiff, in the early evening put her baby to bed, and, about six o'clock, followed the child, in a room in the southeast corner of the house, on the first floor, a room having an east window looking on the railroad track.

The wife and grown sons retired, and plaintiff, after visiting the barn in the evening, went to bed, at about ten o'clock.

His testimony as to the wind, during the afternoon when he was working his team about the place, was: "It was very windy and changeable. I think it was squally that night. We had a snow squall, I remember, about eight o'clock." It was windy when he was at the stable in the evening.

The nearest neighbor, living northerly, drove into her dooryard at about eleven that night and testified to a wind from the northeast blowing in her face as she walked from her garage to her house.

She sat up till about 11:45, and as she started to her bedroom "noticed that awful flame down to Mr. Goodwin's."

At the Goodwin home the daughter was wakeful during the first hours of the night, and testified she was awake when the passenger train went by toward Boston, at about eleven o'clock. She said "I looked out of my window and saw a large blaze. Apparently they were coaling the engine, because there was such an enormous blaze it frightened me." She said she dozed back to sleep and awakened again about a quarter of twelve, saw a red reflection in the sky, arose, went to the dining room door, looked out of the (northerly) window "and saw the fire on the shed."

She roused the household; father and boys rushed out and up to save the farm machinery, which was in the tool shed.

The men folks testified the wind was then blowing from the track onto the farm buildings. Their water system, from a pressure tank, was put in use, but the fire persisted and soon ignited the house and shed.

Furniture, etc., was piled southwesterly from the house, where it, a bit later, was blazing, in part, and was a second time removed and guarded.

Against this testimony there was much presented, as to the perfect condition of the locomotive, the alleged fact it was running without pressure along a one per cent grade by the buildings.

Out of all the believable testimony the jury had to determine whence came the hot ember that ignited roof or wall of ice house or shed.

The only fire testified to as used in the Goodwin house that day was in the kitchen stove, a fire of dry wood.

Plaintiff testified that when he went to bed there was a little fire in that stove.

No other source is suggested whence the destructive spark may have come.

If from facts and circumstances, satisfactorily proven, the normal, reasoning mind may infer that the fire was communicated from defendant's engine, the jury may properly draw that inference.

*Jones* v. *Railroad Co.*, 106 Me., 442, 76 A., 710; *Interstate Mfg. Co.* v. *M. C. R. Co.*, 123 Me., 549, 121 A., 90; *Libby* v. *Railroad*

*Co.*, 116 Me., 234, 100 A., 1025 ; *Warner* v. *M. C. R. Co.*, 113 Me., 129, 93 A., 53 ; *Duplissy* v. *Railroad Co.*, 112 Me., 263, 91 A., 983.

There is in the record enough to satisfy us that finding defendant liable in this case was justified by the pertinent evidence.

The jury had more to guide them than have we, for they inspected the locus, and much of the testimony was thus interpreted for them.

*Motion overruled.*