ARTHUR FOWLES
*vs.*
JANE LOUISE DAKIN
AND
LAWRENCE FOWLES, PRO AMI
*vs.*
JANE LOUISE DAKIN

Oxford County.  Opinion, December 3, 1964.

*William E. McCarthy, Esq.,*
*Richard E. Whiting, Esq.,* for Plaintiffs.

*Mahoney, Thomes, Desmond & Mahoney,*
   by: *James R. Desmond, Esq.,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J.   On appeal from judgment entered upon denial of defendant's motions for new trial and judgment notwithstanding the verdict in companion cases of minor and parent complaining of personal injury sustained by the child in collision between the child ridden bicycle and defendant operated automobile.   The case went to the jury upon the testimony of witnesses and exhibits, the defendant electing not to take the stand, and the motions by defendant were based, and the appeals are based, upon the conventional issues of negligence on the part of the defendant and contributory negligence on the part of the minor plaintiff.

The questions before this court are whether the record

   (a) legally justifies a finding of negligence on the part of the defendant, and

   (b) legally justifies a finding of due care on the part of the minor plaintiff.

The record establishes the following undisputed facts: The accident occurred in the Town of Dixfield, about midday on Route 2, a highway which, for purposes of the case, is described as running north and south with a hard surface of approximately 20 feet in width with a white line

in the center, and a gravel shoulder on the easterly side of 4 - 5 feet in width.

A gravel driveway serving two houses easterly of Route 2 descends "sharply" or "steeply" in a southwesterly direction to enter Route 2. The mouth of the driveway widens as it approaches the westerly line of the highway so that the northerly and southerly lines of the driveway as extended at the point of the intersection represent an opening of about 45 feet. On the easterly side of Route 2 within the area involved is a high bank, about 30 feet high at its highest point, sloping upward from the ditch line at about 45 degrees, and through the northerly end of this bank the driveway reaches the highway through a cut, the southerly bank of which is about 15 feet high. The intersection of the driveway and the highway was a "blind" intersection.

The minor plaintiff, a boy of 11 years 5¾ months of age, in the "fourth or fifth" grade in school, had been playing with companions in the area of the houses served by the driveway. He had been on this driveway on one previous occasion. Upon his bicycle he descended the driveway toward Route 2 with both legs extended and his heels in contact with the ground to control his speed. After covering about three-quarters of the distance from the houses to Route 2 he stopped to observe the conduct of his companions, who were behind him, and then proceeded toward Route 2, looking both north and south on Route 2 when he reached the shoulder of the road, observing no cars approaching and without stopping, entered the highway, to proceed southerly. The collision occurred approximately 3 - 4 feet into the highway from the easterly edge of the hard surface. This point is identified as being "about three-quarters of the way southerly from where the mouth of the driveway begins on the north side." The boy testified that he first observed the defendant's car when it was

"pretty near on top of me; just looked around; it was right there; just a flash of the car I see."

The defendant was operating an automobile from south to north on Route 2, which southerly of and approaching the driveway forms a gradual curve from west to east and descends a grade past the exit of the driveway. This grade is described by the Engineer as "somewhere 6 to 8 feet," which we interpret as meaning 6 to 8 feet vertical descent in 100 feet horizontal distance. On the easterly side of Route 2, 320 feet south of the driveway was a sign "blind driveway." The plan records 13.5 feet descent from a point near the "blind driveway" sign to a point opposite the middle of the driveway. The road was dry. The posted speed limit affecting north bound traffic was 40 miles per hour. There is no testimony as to the speed at which defendant was traveling as she approached or reached the driveway.

The investigating officer testified that "Mrs. Dakin said she was proceeding northerly on Route 2 toward Dixfield Village and upon rounding the curve, approaching the driveway, she suddenly observed the bicycle coming on to Route 2, she applied her brakes and the collision occurred between her vehicle and this bicycle."

After the collision the defendant's car stopped, facing north, in the mouth of the driveway partially on and partially off the black surface of the road. There were "rubber marks" extending southerly from the rear of the car 48 feet, all easterly of the center line of the highway and beginning 2 - 3 feet south of the mouth of the driveway and about 8 to 10 feet south of the point identified as the point of collision.

There was also a rubber mark in the driveway which "appeared to be of a tire which was dragging from the bicycle" which started back from the shoulder of the road,

was "less than half" as long as the rubber marks attributable to the automobile and terminated at the point 3 or 4 feet onto the easterly portion of the highway at the spot identified as the place of collision.

There was a sign in the area, prepared and erected by the local police, reading "Drive Carefully Children Playing."

Controversy exists as to two physical features identified with the case. The state officer testified that the "Children Playing" sign was located somewhere south of the driveway facing north bound traffic. The local officer who had to do with the erection of the sign stated that he believed the sign was located about 200 yards toward Dixfield Village from the point of the accident, which would have been northerly of the scene, and facing south bound traffic.

As to the rubber mark on the driveway attributable to the bicycle, the plaintiff testified on direct examination that after his pause to observe the conduct of his companions, he continued on toward Route 2 again dragging his feet. On cross-examination he testified that no part of his feet were on the pedals of the bicycle coming down the driveway "until three-quarters of the way down the hill," that thereafter he was not pedaling but was just "coasting."

As to visibility southerly from the area of the driveway the Engineer who prepared the plan testified that the "blind drive" sign was visible from the easterly edge of the highway at the middle of the driveway.

From cross-examination it is indicated that in a pretrial interrogatory of the minor plaintiff, he had stated that "just prior to reaching U. S. Route 2 * * * I could see about 100 feet to the left." At trial to the question: "Well, at least, you can see more than half way to this sign ("Blind Drive") can't you?" Answer: "Yes, I think so."

Photographic exhibits offered to lend visual aid to an understanding of the location, leave much to be desired. They are not keyed to the record and the points from which they were taken are not disclosed. We do not have the benefit of the jury's view.

Measuring first the defendant's conduct, it cannot be said that the record does not support the jury finding of negligence. She did not elect to become a witness and "we must assume that (s) he preferred the adverse inferences which might be drawn from the complainant's evidence to any statements (s) he could truly give or any explanations (s) he might make and the failure of this defendant to take the stand under these circumstances is a fact which cannot be disregarded." *Devine* v. *Tierney, et al.,* 139 Me. 50, 55; 27 A. (2nd) 134. The absence of her testimony dealing with the "Children Playing" sign, the visibility from her north bound car, her observance of the posted speed limit, and whether or not the statement attributed to her by the State Officer that "she suddenly observed the bicycle coming on to Route 2" is to be accepted as a grammatically accurate quotation or that her statement was that "the bicycle suddenly appeared coming onto Route 2," — which latter expression would suggest defensive application of the "sudden appearance" doctrine, *Bean* v. *Butler,* 155 Me. 106, 108; 151 A (2nd) 271, justifies inferences that the "children playing" sign was south of the point of collision, that it was or should have been observed, and that it charged defendant with reasonable expectation of the presence of children in the vicinity, *Bean, supra,* at 109. Such inferences suggest either an existing condition within the speed regulation (§ 113, Chapter 22, R. S.), calling for operation of the car at a careful and prudent speed and under control as defined in *Esponette* v. *Wiseman,* 130 Me. 297, 303; 155 A. 650, or imply thoughtless inattention which has been characterized as negligence as a matter of law. *Bridgham* v. *Hinman, Inc.,* 149 Me. 40, 42; 97 A. (2nd) 447.

In testing the conduct of a minor child, as plaintiff, our rule has been many times announced that in cases involving controversial facts bearing upon the actions of the child, it is for the jury to determine whether the child has exercised care that the ordinarily prudent child of his age and intelligence (training, experience, judgment, capacity) are accustomed to exercise under like circumstances, of which *Ross* v. *Russell*, 142 Me. 101, 104; 48 A. (2nd) 403 and *Johnson* v. *Rhuda*, 156 Me. 370, 374; 164 A. (2nd) 675, are examples. Conversely, under exceptional circumstances, *Searles* v. *Ross*, 134 Me. 77, 83; 181 A. 820, and in instances where the conduct of the child plaintiff is reflected by undisputed testimony or physical facts, the jury question may disappear and the conduct ruled upon as a matter of law. See *Moran* v. *Smith*, 114 Me. 55, 57; 95 A. 272 (child of 8 years) ; *Brown* v. *European & North American Railway Company*, 58 Me. 384, 389 (child of 8 years 8 months) ; *Levesque* v. *Dumont*, 116 Me. 25, 27; 99 A. 719 (child of 9 years 2 months) ; *McKinnon* v. *Bangor Railway & Electric Company*, 116 Me. 289, 292; 101 A. 452 (child of 10 years) ; *Colomb* v. *Portland & Brunswick Street Railway*, 100 Me. 418, 420; 61 A. 898 (child 10 years 7 months) ; *Crosby, Admr.* v. *Maine Central Railroad Company*, 113 Me. 270, 274; 93 A. 744 (child 11 years 10 months) ; and *Greene, Admr.* v. *Willey*, 147 Me. 227, 233; 86 A. (2nd) 82 (child 11 years 11 months).

Here the child's capacity for self care must be determined from the only facts given us, — that he was 11 years 5¾ months of age and that he was in the 4th or 5th grade in school.

A bicycle is not a "vehicle" within the terms of our highway law (Chapter 22, § 1, R. S.) and as such it and the rider are not bound by the rule of the road (Chapter 22, § 86, R. S.), which requires the driver of a vehicle entering a public way from a private road to yield the right of

way to all vehicles approaching on such public way, and our case interpretation of that rule.

Adopting a view of the evidence most favorable to the minor plaintiff, we find that from the easterly shoulder of the highway he admits to having visibility of at least 150 feet in the direction from which the defendant came. Assuming that the defendant were traveling at such speed as to traverse that 150 feet while plaintiff was moving 4 to 9 feet, which is possible, the fact remains that after the boy "looked" while on the shoulder of the road, he continued without either stopping or further observation until the collision.

The physical evidence of the "rubber marks" attributable to the bicycle during its last indeterminate footage of travel and the boy's testimony upon cross-examination that he was "coasting" justifies a conclusion that the rider was "coasting" before action on his part to cause any rubber marks, and that a) during the period of "coasting" and b) during the period of creation of the "rubber marks," — if these periods were not, in fact, simultaneous, or over-lapping, he was moving at a speed sufficient for him to remain astride the bicycle. When he states that "I could have stopped myself with my feet if I had seen a car coming," he implies that he was not theretofore dragging his feet.

Upon these facts and proper inferences originating in them we are urged to hold as a matter of law that the minor plaintiff was negligent. The interpretation and significance of the marks attributable to the bicycle, in the light of the descending driveway, which the jury saw, and the conduct, if any, on the part of the boy which the marks reflected, was a jury question.

To hold the boy's conduct, at relevant times, as negligent is to hold that his failure to continue his observation to the

south after his "look" or his failure to stop and listen for approaching traffic not yet visible was a breach of the due care expected of him.

To so hold, is to charge this boy with the realization that a motor vehicle could appear around a curve 150 feet distant, travel that distance and expose him to danger before he could move from the shoulder of the road and cross the north bound lane of Route 2. Our knowledge of the boy upon which to premise his capacity for self care is extremely limited, and whether his capacity for self care included knowledge of the danger inherent at this blind intersection, and an awareness of the brief time required for a car to appear and reach him was a jury question. See *Shimkus* v. *Caesar*, 62 A. (2nd) 728 (N. H. 1948) and *Locklin* v. *Fisher*, 36 N. Y. S. (2nd) 162 (S. Ct. N. Y. 1942), which represent the distinct weight of authority.

*Appeal denied, in both cases.*